## Ex parte LEE F. WILSON.

No. A-1793.   Opinion Filed July 29, 1912.

(125 Pac. 739.)

1.   ELECTIONS — Nominations — Primaries.   Party nominations by primary elections is a fundamental principle of popular government, and is a permanent rule of public policy in this state, as declared by article 3, sec. 5, Const. (47, Williams'): "The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties, including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

2.   SAME—Constitutional Provisions.   Under this positive constitutional direction, it is the right and duty of the Legislature to prescribe reasonable regulations for the holding of mandatory primary elections; but such regulations must not contravene other constitutional provisions relating to elections.

3.   SAME—Political Parties.   This provision of the Constitution recognizes political parties for the purpose of nominating candidates for elective offices, and contemplates that only electors who are members of political parties shall participate in primary elections for the selection of candidates for the respective parties, and then vote only the ballot of the party of which they are members.

4.   SAME.   The mandatory primary provision of the Constitution and the provision of article 3, sec. 4, Const. (45, Williams') providing that "the Legislature shall enact laws creating an election board, not more than a majority of whose members shall be selected from the same political party," are a constitutional recognition of political party organization.

5.   ELECTIONS — Nominations — "Primary Election."_ Article 3, secs. 1, 4a, and 7, Const. (42, 46, and 49, Williams') prescribing the qualifications of electors and guaranteeing their right to vote, applies to the election of public officers, and not to the selection of party nominees at a primary election. A "primary election" is one for the nomination of candidates of the respective political parties by the members thereof.

6.   SAME—Qualifications of Voters.   The qualifications of electors entitled to vote at a primary election are the same as the qualifications of electors entitled to vote at the general election within the election precinct where the primary is held, except that, in addition thereto, the elector participating in a primary elec-

tion must be a member of a party recognized by the official ballots of said primary.

7. **ELECTIONS—Right of Suffrage—Organization of Political Parties.** The right of suffrage includes the right to form political parties, and the right of each party to promulgate rules, not reasonably prohibited by law, for making its organization effective, to promote its principles and policies by electing officers in harmony therewith to legislate and execute the law to that end.

8. **SAME—"Political Parties."** "Political parties" are voluntary associations of electors, having an organization and committee, and having distinctive opinions on some or all of the leading political questions of controversy in the state, and attempting through their organization to elect officers of their own party faith and make their political principles the policy of the government. They are governed by their own usages and establish their own rules.

9. **SAME—Powers.** Self-preservation is the right of political parties, as well as individuals. It is for the party to nominate; for the people to elect.

10. **ELECTIONS—Primary Elections—Statutory Provisions.** The provisions of the primary election law, which are designed only to prevent any but voters affiliated with a particular party from voting at primary elections, are reasonable and proper, in view of the object to be obtained by a mandatory primary election law, and do not infringe upon any constitutional rights of electors, since said law provides a method by which nonpartisan and independent nominations may be made by petition in accordance with the proviso of article 3, sec. 5, Const. (47, Williams').

11. **ELECTIONS—Primary Elections—Qualifications of Voters—Determination.** Whether a person offering to vote at a primary election has the requisite qualification as to being a member, in good faith, of the party whose ballot he asserts the right to vote must, on challenge for want of such qualification, be inquired into and determined by the inspector of election in the manner provided for proving qualification under the general election law.

12. **SAME.** When an elector demands a party ballot, if the election inspector, judge, or party watcher, knows, or has reason to believe, that the elector offering to vote is a nonpartisan, or not a member of the party whose ballot he is attempting to vote, it is the duty of such election officers to challenge the right of such elector to vote; and any challenger for any candidate may challenge the right of such elector to vote the ballot of the party making the challenge. If the challenge be on the ground that the elector is not, in good faith, a member of the party whose ticket he is attempting to vote, the duty of the inspector is the same as upon challenge as to any other qualification; and proper proof should be required in the manner required · by the general election law for proving qualification before such elector shall be permitted to vote.

13.    **SAME.** An elector cannot prescribe his own method of proving his qualification in respect to his party membership, so as to preclude the election inspector from disputing or rejecting his proof.

14.    **SAME.** An elector offering to vote at a primary election shall prove his qualifications in the same manner in which electors are required by law to prove their qualifications at the general election. Such elector shall have the right to receive the ballot of the party of his affiliation, and no other.

15.    **SAME.** The mere fact that an elector has registered and then and there stated his political party affiliation does not preclude the right to interpose a challenge on the ground that he is not in good faith a member of the party stated in his registration certificate, and whose ballot he requests to vote.

16.    **ELECTIONS—Constitutional Guaranties—"Free and Equal Election."** The guaranty of a "free and equal election" signifies that elections shall not only be open and untrammeled to persons endowed with the elective franchise, but shall be closed to all not enjoying such privilege under the Constitution.

17.    **ELECTIONS—Offenses Against Election Laws—Duties of Election Officers.** An information charging an election inspector with the offense of refusing the request of the elector named therein, who has all of the constitutional qualifications of an elector at a general election, and who had duly registered as an elector in said precinct, but not as a Democrat, and who demanded and was refused a Democratic ballot, which information fails to allege that said elector was then and at that time a member of the Democratic party, or had at the last preceding general election voted the Democratic ticket, or that said elector then and there, on oath or affirmation, stated that he intended to support the nominees of the Democratic party at the general election for which nominees of the respective political parties were then and there being selected by a primary election, **held** that, the information failing to allege these facts, the facts stated do not constitute a public offense, and, as a matter of law, the facts stated constitute a legal justification for the action of the petitioner, as such election inspector, in refusing to deliver a Democratic ballot. **Held,** further, that to have delivered a Democratic ballot, and to have permitted the elector named to vote the same, under the facts stated in the information, would have been a violation of the petitioner's duty as such election inspector. Therefore the petitioner is entitled to be discharged.

(Syllabus by the Court.)

In the matter of the application of Lee F. Wilson for writ of *habeas corpus.* Writ granted, and petitioner discharged.

The petitioner, Lee F. Wilson, on July 24, 1912, filed in this court a petition, which, omitting the title and verification, is as follows:

"Comes your petitioner, Lee F. Wilson, and respectfully shows to the court:

"(1) That he is imprisoned and restrained of his liberty in the county jail of Oklahoma county, Oklahoma, by Jack Spain, sheriff of said county.

"(2) That, according to the best of the knowledge and information of your petitioner, he is so imprisoned and restrained of his liberty by the said sheriff under and by virtue of a warrant of arrest issued by the county judge of Oklahoma county, and based on an information filed in the county court of said county by Sam Hooker, county attorney, charging, in substance, that your petitioner, on the 2d day of August, A. D. 1910, in Oklahoma county, Oklahoma, being then and there election inspector of precinct A of the Third ward, of Oklahoma City, and then and there acting as such at the primary election, then and there held according to law, did deprive one W. P. Cloonan, a duly qualified elector, of his vote in said primary election by then and there refusing to deliver to the said W. P. Cloonan a Democratic primary ticket, although the said W. P. Cloonan had then and there designated the Democratic primary ticket as the ticket he then and there desired to vote, and had then and there requested of the said Lee F. Wilson, election inspector, as aforesaid, that he, the said Lee F. Wilson, deliver to the said W. P. Cloonan the said Democratic primary ticket. A full, true and correct copy of said information is attached hereto, marked 'Exhibit A,' and made a part hereof.

"(3) That the aforesaid restraint and imprisonment of your petitioner is illegal and without authority of law, in that the said information fails to charge a public offense, because the same contains no allegation (1) that the said W. P. Cloonan was, on the 2d day of August, 1910, a member of the Democratic party, or (2) that the said W. P. Cloonan had at the last general election, prior to said 2d day of August, 1910, voted the Democratic ticket, or (3) that the said W. P. Cloonan then and there intended to support the nominees of the Democratic primary at the general election, for which the nominees of the several parties were then and there being named.

"Wherefore petitioner prays that the writ of *habeas corpus* may issue out of this honorable court, directed to the said Jack Spain, sheriff as aforesaid, commanding him to have the body of your petitioner, together with the time and cause of his detention, before the court at a time to be by the court fixed; that pending said sheriff's return to said writ, and the final determination of this cause, your petitioner may be admitted to bail

in a reasonable sum to be fixed by the court; that upon such final hearing he may be discharged from the custody of said sheriff; and for all other proper relief."

And on said day the petition was presented to his honor, Presiding Judge Furman, who issued a writ, returnable July 25th, and ordered that, pending the determination of said application, the petitioner be admitted to bail in the sum of $500. On said return day, respondent filed his return thereto. The case was thereupon argued and submitted.

*E. J. Giddings, Jennings & Levy, E. G. McAdams, E. L. Kistler, W. A. Ledbetter,* and *Norman R. Haskell,* for petitioner.

*Sam Hooker,* Co. Atty., and *Selwyn Douglas,* Asst. Co. Atty., for respondent.

DOYLE, J. (after stating the facts as above). The petition herein and the return to the writ issued thereon show that on July 24, 1912, Sam Hooker, county attorney of Oklahoma county, filed in the county court of said county an information against the petitioner, Lee F. Wilson, purporting to charge him with a violation of the primary election law, as follows:

"That on said 2d day of August, 1910, a primary election was held in and for precinct A of the Third ward of Oklahoma City, in the county and state aforesaid, for the nomination of candidates of the several political parties for the general election to be held according to law in the month of November, 1910, and the said Lee F. Wilson was then and there the duly qualified and acting election inspector at and for the precinct aforesaid; and one W. P. Cloonan, who was then and there a duly qualified elector of the election precinct, city, county and state, aforesaid then and there designated to the said Lee F. Wilson the Democratic primary ticket as the ticket he desired to vote at said primary election and did then and there request of the said Lee F. Wilson, as such election inspector, that he, the said Lee F. Wilson, deliver to the said W. P. Cloonan a Democratic primary ticket; and the said Lee F. Wilson, then and there well knowing the said W. P. Cloonan to be a duly qualified elector, as aforesaid, did then and there willfully, knowingly, and unlawfully deny the request of the said W. P. Cloonan for such Democratic primary ticket, and did then and there willfully, knowingly, and unlawfully fail and refuse to deliver such Democratic primary

ticket to the said W. P. Cloonan, upon the unlawful pretext that he, the said W. P. Cloonan, was not then and there entitled to cast his vote in the Democratic primary, for the reason that he, the said W. P. Cloonan, had theretofore not registered as a Democratic voter with said Lee F. Wilson as such inspector and at said primary did not then and there exhibit to the said Lee F. Wilson his registration certificate as required by law, contrary to," etc.

Upon the information the judge of said county court issued a warrant, which was duly executed by arresting the petitioner.

It is averred in the petition, and the learned counsel for petitioner contend, that the restraint and imprisonment of petitioner is illegal and without authority of law, in that said information fails to charge a public offense, and therefore does not authorize his detention to answer thereto.

On behalf of the respondent, it is claimed that an elector possessing the qualifications prescribed by the Constitution is invested with the constitutional right to vote at any election in this state; and therefore the information charges a public offense.

The question presented is, Does the information charge a public offense? The answer to it depends upon the construction now to be given to the primary election laws. Party nomination by primary elections is a fundamental principle of popular government, and is a permanent rule of public policy, as declared by provisions of our state Constitution: Article 3, sec. 5, Const. (47, Williams') :

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties, including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

And Const. art. 3, sec. 6 (48, Williams') :

"In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be neces-

sary to detect and punish fraud, and preserve the purity of the ballot."

In pursuance of the constitutional direction, the first Legislature enacted a mandatory primary election law. Article 2, c. 31, of the Session Laws of 1907-08. Subsequently this act was amended. Article 4, c. 16, of the Session Laws of 1909.

The act in question cannot be set out in full without extending this opinion to an unreasonable length, however desirable it would be to do so; we therefore must be content to set out a few of the principle provisions, as follows:

Section 3266, Comp. Laws 1909: "Political parties in this state shall select or nominate their respective candidates for the various state, district, county, township and precinct officers by a primary election as herein provided for, and no candidate's name shall be printed upon the official ballot for any general or special election at which all or any of the state, district, county, township or precinct officers are to be elected, unless such candidate shall have been nominated as herein specified: Provided, that this provision shall not exclude the right of nonpartisan candidates to have their names printed upon such official ballots as hereinafter provided for. (Session Laws 1909, S. B. 5. Took effect June 11, 1909.)"

Section 3267: "The first Tuesday in the month of August of each and every even numbered year, beginning with the year nineteen hundred eight, shall be the biennial primary election day at which time each and every political party entitled and intending to make nominations for the next general election shall nominate their candidates for all elective offices and positions enumerated in section 3266 of this act to be filled at such general election, and including United States Senators: Provided, that nominations for any special election, held for the purpose of filling a vacancy in any office or offices, caused by death, resignation, or removal, may be made by delegate convention, if, in the judgment of the state election board, the time is too short in which to hold a primary election, or the cost of holding same would be excessive or unnecessarily burdensome: Provided, that if special primary elections are held to fill vacancies in the Legislature, they shall be held on a day fixed by the Governor by proclamation, which proclamation shall be issued fifteen days before the day of such special primary election. (Sess. Laws 1907-08, p. 359.)"

Section 3268: "The voting place in each precinct or ward and the inspector, judges and clerks shall be designated and selected and advertised in the same manner as provided by law for general elections, and all provisions of the general election laws, not inconsistent with this act, shall govern such primary election. (Sess. Laws 1907-08, p. 359.)"

Section 3275: "Each ward and voting precinct shall be provided with ballot boxes, ballots, poll books, tally sheets, blanks for returns, oaths and all necessary election supplies by the same officers and in the same way, and all expenses of such primary election borne and paid in the same manner as is now or may hereafter be provided by law for general elections. (Sess. Laws 1907-08, p. 361.)"

Section 3277: "Each political party shall have the right to place one of its members at the polls as watcher during the whole time of receiving and counting the ballots, who shall be selected by the committeeman of such party in such ward or voting precinct. (Sess. Laws 1907-08, p. 361.)"

Section 3286: "No ballot shall be given an elector for the purpose of voting until the name of the elector has been entered upon the poll book and the method of voting shall be the same as in other elections. Returns of primary elections shall be made in the manner provided by the general election laws. (Sess. Laws 1909, S. B. 5. Took effect June 11, 1909.)"

Section 3290: "Every act declared to be an offense by the general election law shall be such under this act, and any person found guilty of any such offense shall be subject to the penalties prescribed by such election law. (Sess. Laws 1909, S. B. 5. Took effect June 11, 1909.)"

Const. art. 3, sec. 6 (48, Williams'), provides:

"The Legislature may, when necessary, provide by law for the registration of electors throughout the state or in any incorporated city or town thereof, and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

Article 1, subart. 8, c. 31, of the Session Laws of 1907-08, provides a system of registration for cities of the first class. This act requires, as a prerequisite to the exercise of the constitutional right to vote at any election, the previous registration of all electors in cities of the first class. It is provided therein that the elector shall state his political party affiliation,

if any, and that his registration certificate shall set forth this fact.

It is claimed on behalf of respondent that by opinion of the Attorney General section 9 of article 2, c. 31, of the Session Laws of 1907-08 (section 3276, Comp. Laws 1909), which provides:

"The names of candidates of the several political parties shall be printed upon separate sheets of paper of different color under the party device and *each voter shall designate which ticket he desires to vote, and upon request of the election inspector shall deliver to the voter the ticket called for.* When the voter has made out his ballot he shall fold the same and hand it back to the inspector and in the presence of the voter the inspector shall deposit the ballot in the ballot box. The ballots of the several political parties shall be deposited in the same box. The number of ballots provided for each party, in each precinct, shall be equal to a number which is twenty per cent in excess of the vote cast for the party candidate for Secretary of State in such precinct, at the last preceding general election (Sess. Laws 1907-08, p. 361)"

—has not been repealed, and that the provision therein that "each voter shall designate which ticket he desires to vote, and upon request of the election inspector shall deliver to the voter the ticket called for," gives to any elector desiring to vote at a primary election the right and privilege to demand and vote any ticket, regardless of his party affiliations.

As we view the law, this section was repealed by substitution, upon the enactment of section 4, art. 4, c. 16, Sess. Laws 1909 (section 3273, Comp. Laws 1909), which provides:

"The names of candidates of the several political parties shall be printed upon separate ballots and of different color. No party emblem or device shall appear thereon and *no elector shall be permitted to vote for the nomination of candidates of more than one party in any primary election.* The ballots for primary elections shall be printed by the county election boards as nearly in conformity with the provisions of the general election law as may be. (Sess. Laws 1909, S. B. 5. Took effect June 11, 1909.)"

The rule of construction of statutes is that, where two acts are not in express terms repugnant, yet, if the latter act covers

the whole subject of the first, and embraces new provisions plainly showing that it was intended as a substitute of the first act, it will act as a repeal of the first, especially where the subsequent act contains a general repealing clause, as in this case. *Petitti v. State, infra,* 121 Pac. 278.

It is also claimed that by opinion of the Attorney General, the clause in this section, that "no elector shall be permitted to vote for the nomination of candidates of more than one party in any primary election," gives to the voter the right to vote one official party ballot of any party he may designate. In our view this clause does not need construction at all. The plain purpose is to prevent a voter at a primary election from voting different party ballots for congressional, state, and county candidates.

It is alleged that the elector named in the information was a duly qualified and registered elector of the precinct named, but did not register as a Democrat. The petitioner is charged with having refused to deliver to him a Democratic ballot.

The propositions presented are, first, whether or not a qualified elector, who is not a member of any political party having official ballots at a general primary election, is entitled to vote at such primary election. Second, whether or not an elector may vote the ballot of any party he chooses to select, whether he is a member of that party or not.

Upon careful consideration, we are of opinion that the constitutional provisions contemplate that only electors who are members of political parties shall participate in the primary election for the selection of candidates for the respective parties, and then vote only the ballot of the party of which they are a member, and that nonpartisan electors having no party affiliations are relegated to their right to paticipate in the nomination of candidates for elective office by petition in the manner provided for by the primary election law. A few plain and unquestionable propositions will sufficiently present the views of this court in support of this position.

The mandatory primary election provision of the Constitution and the provision of article 3, sec. 4, Const. (section 45, Williams'), "The Legislature shall enact laws creating an election board, not more than a majority of whose members shall be selected from the same political party," are a constitutional recognition of political party organization.

"Political parties" are voluntary associations of electors, having an organization and committee, and having distinctive opinions on some or all of the leading political questions of controversy in the state, and attempting through their organization to elect officers of their own party faith and make their political principles the policy of the government. They are governed by their own usages and establish their own rules.

No one with any knowledge of the history of our country will contend for a moment that political parties have not played an important part in shaping the destinies of our government; nor that they were not a powerful and necessary force in a successful administration of the affairs of the national and state governments. So potent have they become in determining the measures and in administering the affairs of government, that they are now regarded as inseparable from, if not essential to a republican form of government.

"In his The American Commonwealth, Mr. Bryce says: 'In America the great moving forces are the parties. * * * The spirit and force of party has in America been as essential to the action of the machinery of government as steam is to a locomotive engine; or, to vary the simile, party association and organization are to the organs of government almost what the motor nerves are to the muscles, sinews, and bones of the human body. They transmit the motive power; they determine the directions in which the organs act. A description of them is therefore a necessary complement to an account of the Constitution and government; for it is into the hands of the parties that the working of the government has fallen. Their ingenuity, stimulated by incessant rivalry, has turned many provisions of the Constitution to unforeseen uses, and given to the legal institutions of the country no small part of their present color.' Sir Henry Sumner Maine says: 'It is not to be expected that all the hopes of the founders of the American Constitution would

be fulfilled. They do not seem to have been prepared for the rapid development of party, chiefly under the influence of Thomas Jefferson, nor for the thorough organization with which the American parties before long provided themselves.' And again he says: 'The truth is that the inherent difficulties of democratic government are so manifold and so enormous that in large and complex modern society it could neither last nor work if it were not aided by certain forces which are not exclusively associated with it, but of which it greatly stimulates the energy. Of these forces, the one to which it owes most is unquestionably Party.' The elector's choice of persons for office, to be effective, must be from party candidates, and so the nomination of candidates becomes as much a matter of public concern as the election of officers." (*State v. Felton,* 77 Ohio St: 569, 84 N. E. 87.)

From the provisions of the primary election law enacted in accordance with the constitutional direction, the intent of the Legislature would appear to be manifest. Its plain purpose is to provide for and regulate the nomination of candidates by political parties, and thereby preserve the purity of elections, upon which must depend the safety and security of republican forms of government.

A mandatory primary election law, to be valid, must sustain the constitutional rights of electors, who, as members of a political party, participate in such primary elections; and it will not be presumed that the Legislature intended to deny the political parties or members thereof participating in the primary elections proper protection under the law.

The election provisions of the Constitution and the mandatory primary election law were intended for the protection of the party, and of the citizen in his rights as a member of a political party, and guarantee to him the right to express, through his ballot at a primary election, his wish as to the conduct of the affairs of his own party, and his preference in the selection of the candidates for office within his party. If this was not so, an elector participating in a primary election would be powerless, and without any method or means of protecting this right conferred upon him by the Constitution and law.

In the case of *People v. Board of Election Commissioners of Chicago,* 221 Ill. 9, 77 N. E. 321, 5 Ann. Cas. 562, Cartwright, C. J., delivering the opinion of the court, said:

"The right to choose candidates for public offices, whose names will be placed on the official ballot, is as valuable as the right to vote for them after they are chosen, and is of precisely the same nature. There is scarcely a possibility that any person will or can be elected to office under this system, unless he shall be chosen at a primary election; and this statute, which provides the methods by which that shall be done, and prescribes and limits the rights of voters and of parties, must be regarded as an integral part of the process of choosing public officers, and as an election law. It is undoubtedly true, as urged by counsel for defendants, that it has become not only proper, but necessary, to provide additional safeguards and protection to the voters at primary elections, to the end that their will may be fully expressed and faithfully and honestly carried out, and any law having that object in view would naturally commend itself to the lawmaking power. The legitimate purpose of such a law, however, must be to sustain and enforce the provisions of the Constitution and the rights of voters, and not to curtail or subvert them, or. injuriously restrict such rights."

In the case of *Britton v. Election Commissioners,* 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115, it was held that a primary election law permitting a voter, without regard to party affiliations, to vote at a primary election for delegates to the political convention of any party that he chooses to select, whether he is a member of that party or not, or ever intends to become such, gives an opportunity for disruption and destruction of political parties by its opponents, and is therefore void as a violation of the reserved rights of the people, which the Constitution declares shall not be impaired.

In the case of *Morrow v. Wipf,* 22 S. D. 146, 115 N. W. 1121, Haney, P. J., delivering the opinion of the court, says:

"Regarding legislative control of party nominations, this court has said: 'It is for the party to nominate; for the people to elect. The question is not who shall be chosen to any particular office. That is for the voters of all political parties to determine at the polls. It is simply who shall represent the organization as its nominees, and certainly the determination of

that question should be controlled by the action of the party itself; otherwise party nominations are impossible. To what extent, if at all, the rights of organized political parties should be recognized and regulated by law is a matter of public policy, to be determined by the legislative department—a matter which does not concern this court. Its duties are done when it gives effect to the legislative will as expressed in statutes which do not conflict with any provision of the federal or state Constitution. *State v. Metcalf,* 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331. Undoubtedly the qualifications of an elector, as defined by the Constitution, for the purposes contemplated by its provisions relating to the elective franchise, are exclusive and conclusive. Undoubtedly no valid law can be enacted on any subject or for any purpose which deprives the elector of substantial rights under such provisions. Undoubtedly, by reason of the Australian ballot system, which limits the elector's choice of candidates to those whose names appear on the official ballot, a relation exists between primary elections and general elections which must not be disregarded. Nevertheless, in the application of constitutional provisions relating to such elections as were contemplated by that instrument to such elections as are provided by this act, the substantial distinction between the choice of a candidate by an organized party and the choice of an officer by the entire electorate must be observed; otherwise the existence of organized political parties, under legislative control, is impossible. Regulation necessarily contemplates and sanctions the continued existence of what is regulated. No law can regulate what it destroys. Whether it would be wise or constitutional for the Legislature to abolish all organized political parties are questions foreign to the present inquiry. The legislation under discussion was not designed to accomplish that purpose. It was the evident intent of the lawmaking power to regulate, not to destroy; and, in order to accomplish its purpose, it was absolutely necessary that each party organization be permitted to establish its own rules regarding the qualifications of its members, or that a rule applicable to all be prescribed. This is conceded by the plaintiff and supported by abundant authority. *Ladd v. Holmes,* 40 Or. 167, 66 Pac. 714, 91 Am. St. Rep. 457; *Rouse v. Thompson,* 228 Ill. 522, 81 N. E. 1109; *State v. Drexel* [74 Neb. 776, 105 N. W. 174], *supra.* Indeed, it has been held that a law permitting electors, who are not members of a party, to participate in the nomination of its candidates is unconstitutional. *Britton v. Board,* 129 Cal. 339, 61 Pac. 1115, 51 L. R. A. 115."

In the case of *Rouse v. Thompson*, 228 Ill. 522, 81 N. E. 1109, the Supreme Court of Illinois says:

"The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at the primary election of a political party, unless he is a member of such party; and, unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by primary election would fail, because of being incapable of execution."

Recurring to the opinions of the Attorney General which the respondent refers to, wherein the primary law is construed as allowing indiscriminate voting, regardless of party affiliation, we are of the opinion that, if such an interpretation could be sustained, then the provisions of the sections referred to would, we think, be clearly unconstitutional, as being in violation of sections 4 and 5, art. 3, of the Constitution, and as being in contravention of that part of section 6, art. 3, which provides that "the Legislature shall make all such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot," and section 7, art. 3, which provides:

"The election shall be free and equal; no power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage."

A primary election is one for the nomination of candidates for office of the respective political parties by the members thereof. If Republicans vote the Democratic party ballot, and Democrats vote the Republican party ballot, and Socialists vote any ballot but their own, then nominations so made cannot be said to be party nominations.

It needs no argument for the position that to permit electors participating in a primary election to vote indiscriminately any party pallot they might choose to select, regardless of their party affiliations, would be simply putting a premium upon deceit, dishonesty, and fraud, and would make it possible for the worst elements of the several political parties participating to direct and control their nominations. Obviously all of the pro-

visions of the primary election law were enacted by the Legislature to prevent electors from voting any ballot except that of their respective parties, and thereby prevent fraud and preserve the purity of the ballot. The constitutional provision and the primary election law provide only for party elections. The right and privilege of the individual voter at the general election to cast his vote untrammeled for the candidate of his choice is no more sacred than the right of the individual member of a political party to express his choice for party candidates at a primary election; and such right cannot be taken from him without abridging his constitutional right to participate in a free and equal election.

To be free means that the elector shall be left in the untrammeled exercise, whether by civil or military authority, of his right or privilege. That is to say, no impediment or restraint of any character shall be imposed upon him, either directly or indirectly, whereby he shall be hindered or prevented from participation at the polls. *De Walt v. Bartley,* 146 Pa. 529, 24 Atl. 185, 15 L. R. A. 771, 28 Am. St. Rep. 814.

The word "equal" has a different signification. Every elector has the right to have his vote count for all it is worth, in proportion to the whole number of qualified electors desiring to exercise that privilege. Now, if persons, not legitimately entitled to vote, are permitted to do so, the legal voter is denied his adequate, proportionate share of influence, and the result is that the election as to him is unequal; that is, he is denied the equal influence to which he is entitled with all other qualified electors. Ballot Reform, Its Constitutionality, John H. Wigmore, 23 Am. Law. Rev. 719; *Edmonds v. Banbury,* 28 Iowa, 267, 271, 4 Am. Rep. 177; *Davis v. School Dist.,* 44 N. H. 398, 404; *Commonwealth v. McClelland,* 83 Ky. 686. So that the terms "free" and "equal," used, as they are, correlatively, signify that elections shall not only be open and untrammeled to all persons endowed with the elective franchise, but shall be closed to all not in the enjoyment of such privilege under the Constitution. *Ladd v. Holmes,* 40 Or. 167, 66 Pac. 714, 91 Am. St. Rep. 457.

In *Commonwealth v. McClelland,* 83 Ky. 685, 693, the court says:

"What are free and equal elections in the meaning of the Constitution? They certainly are not such as may be secured by the indiscriminate exercise of the right of suffrage, without regard to qualifications or regulations necessary to test and determine the right of those who offer to vote. * * * Elections are free and equal only when all who possess the requisite qualifications are afforded a reasonable opportunity to vote without being molested or intimidated, and when the polls are in each county and in each precinct alike freed from the interference or contamination of fraudulent voters."

The members of the several political parties have the constitutional right to select their candidates for office with the same freedom as they have the right to vote for them after they are nominated, or the primary election at which they vote for candidates is a delusion and a fraud upon the individual voter. If the independent voter, or the voter affiliating with an opposition party, can vote at the primary election the ballot of a party with which he has no political affiliation, and thereby control the nominations of a party to which he is opposed, the constitutional guaranty that "the election shall be free and equal" would be destroyed.

Where primary elections for the nomination of party candidates are held, as authorized and required by law, under the supervision and inspection of election officials, including a party watcher present, as provided by section 3277, *supra,* it is not a violation of the Constitution that all electors are not permitted to vote at such primary election. As was said by the Supreme Court of Oregon, in the case of *Ladd v. Holmes, supra*:

"Electors of one party have no desire, unless prompted by sinister or evil motives, nor have they any inherent right within or without the Constitution, to vote at some other party primary or election; hence no right or privilege of which they can complain has been intrenched upon or violated. We see no objection to the Legislature providing for party elections and limiting the electoral privilege to party members. The exclusion of other party members from participating in such elections is not an infringement or denial of a constitutional right or privilege."

A citizen's only right to vote depends upon his qualifications under the Constitution and the law, and this right is subject to limitations of age, ancestry, residence, and sex, and other matters mentioned herein. The qualifications of electors entitled to vote at a primary election are the same as the qualifications of electors entitled to vote at the general election within the election precinct where the primary is held, except that, in addition thereto, the elector participating in a primary election must be a member of some party recognized by the official ballots of such primary.

Each elector shall prove his qualifications in the same manner in which electors in the election precinct in which he offers to vote are required by law to prove their qualifications at the general election; and each elector shall have the right to receive the ballot of the party of his affiliation, and no other.

The only statutory provisions in relation to challenges of electors and the duty of inspectors of election when an elector shall be challenged as unqualified are contained in the general election laws. Section 3285, Comp. Laws 1909, provides that:

"Such primary election shall in all respects conform to the laws governing elections except as herein otherwise provided, and all provisions of law governing general elections not in conflict with this act are hereby made applicable and put in force herewith."

No specific provision is made by the primary law for testing the qualification of an elector as to his party affiliation. The inquiry is, by the general election law, confined to the qualifications enumerated, in which this is not included. Under the foregoing provision, when an elector demands a party ballot, if the election inspector, judge, or party watcher knows, or has reason to believe that the elector offering to vote is a nonpartisan, or not a member of the party whose ballot he is attempting to vote, it is the duty of such election officer to challenge the right of such elector to vote; and any challenger for any candidate may challenge the right of such elector to vote the ballot of the party making the challenge. If the challenge be on the ground that the elector is not, in good faith, a member

of the party whose ticket he is attempting to vote, the duty of the inspector is the same as upon a challenge as to any other qualification.   An elector who resists the challenge and makes oath that he possesses the qualification contemplated by the Constitution should bear in mind that the usual test is, Did the elector vote the party ticket at the last preceding general election?   Another rule of party membership is:   An elector who affiliates with the party and stands by his party organization, and as such member yields obedience to party rules and usages, and accepts and supports the regular party nominations.

By the primary law of Nebraska, the right of an elector to vote at a primary is made to depend upon his political affiliation with the party for whose candidates he desires to cast a ballot. It is therein provided that no person shall "be entitled to vote at such primary election until he shall have first stated to the judges of said primary election what political party he affiliates with, and whose candidates he supported at the last election and whose candidates he intends to support at the next election," and when challenged he must make oath to the truth of the statements, above required, as to party affiliation and his support of the candidates of the party with whom he is offering to vote.   Here, in the absence of a statutory test of the party qualifications of electors at a primary election, the rules and usages of the respective political parties having official ballots to be voted at such primary election must control.

The elector cannot prescribe his own method of proving his qualification in respect to his party membership, so as to preclude the election inspector from disputing or rejecting his proof, but may require him to make proof of his qualification in the manner and mode prescribed by the general election laws for proving qualifications.

The mere fact that an elector has registered, and at that time stated his political party affiliation, does not preclude the right to interpose a challenge, on the ground that he is not a member of the party named in his registration certificate, and whose ballot he requests to vote.

"While a person's name on the registry list is *prima facie* evidence of his right to vote, yet the officers may strike off his name and reject his vote, if they can show that he is not entitled." (Brightly's Leading Cases on Elections, p. 695; Paine on Elections, p. 296.)

The information charges that the elector named therein had all the qualifications of an elector, as required by article 3, secs. 1 and 4a, Const. (sections 42 and 46, Williams'), and that he had duly registered as an elector in said precinct, but fails to state that said elector was then and at that time a member of the Democratic party, or had at the last preceding general election voted the Democratic ticket, or that said elector then and there, on oath or affirmation, stated that he intended to support the nominees of the Democratic party at the general election for which nominees of the several political parties were then and there being named. The information failing to allege those facts, the facts stated do not constitute a public offense, and, as a matter of law, the facts stated constitute a legal justification for the action of petitioner as such election inspector. For petitioner to have delivered a Democratic ballot, and permitted the elector named to vote the same, upon the facts stated in the information, would have been a palpable violation of his duty as such election inspector.

For the reasons hereinbefore stated, we are of opinion that said petitioner is entitled to be discharged; and it is so ordered by the court.

ARMSTRONG, J., concurs.

---

FURMAN, P. J. (concurring). It is a settled rule of law that a statute should be construed with reference to its spirit and reason. To arrive at the spirit and reason of the law, courts must take into consideration what was the law before the statute was passed, and the mischief which it was enacted to correct. In construing a statute, an interpretation must never be adopted which will defeat the very purpose of the law, or which will

enable persons to elude its provisions or defeat the objects for which it was enacted, if this can be avoided. When two different constructions may be placed upon an act, one of which will accomplish the purpose of the Legislature and the other render the act nugatory, the former should always be adopted. It must always be presumed that the legislative body intended to favor and foster, rather than to contravene, public policy, which is based upon principles of natural justice, good morals, and the settled wisdom of the law as applied to the ordinary affairs of life. Therefore courts should not place a construction upon a statute which is contrary to natural justice and right, or which is against public policy and good morals, if they can reasonably avoid doing so. These rules of construction are so manifestly just, and are so well established and universally recognized, that it is not necessary to take time in citing authorities in their support.

To arrive at the spirit and reason of our primary election law, we must consider conditions existing before it was enacted. We will then be in a position to understand the evils at which it was aimed. Where the people are possessed of but little wealth, the territory limited, the population is small, and public questions are few and simple, there is little or no inducement in a republic for persons to organize to plunder the public treasury, or enrich themselves at the expense of the people. It is therefore possible to conduct the business affairs of such a republic without the organization of political parties; but where republics cover a vast extent of country, where the population is dense, the wealth is great, and public questions are many and complicated, experience demonstrates that special interests and personal ambition and selfishness will cause men to combine and organize for the purpose of perverting the government from its rightful purpose and objects, and use it as a means to advance their own personal, selfish interests and fortunes, without regard to the rights and liberties of the people, but for the sole use and benefit of such persons. These organizations are always private and secret, and, unless they are met by counter organizations, it is impossible to defeat their objects. It is

through such combinations and organizations as these that the stream of wealth now produced by the honest, hard-working people of the United States has been diverted from its rightful channels and poured into the already overflowing and undeserving coffers of the few, who revel in immense and stolen wealth, while the people who bear the burdens of the government and do the work which makes this world worth living in find the struggles for existence daily becoming harder and harder, and that the chains which are binding them in the bonds of industrial slavery are daily becoming stronger and stronger and tighter and tighter. These wicked machinations cannot be defeated by individual efforts. Individual efforts will neutralize themselves, while those who are organized, and who act in concert with each other, will be sure of success. If the people would maintain the substance, as well as the form and shadow, of liberty, and if labor would eat the bread which it has earned and enjoy the wealth which it has created, the people must organize in political parties. These political parties must be organized upon the principles of government which they advocate.

The organization of political parties should not stop with simply advocating what are conceived to be correct principles of government; for principles do not enforce themselves. A political party organization will be vain, idle, and amount to nothing, unless it secures the election to office of men who are in sympathy with, and who will enforce, the principles which it advocates; for in this way only can these principles be made effective. It is therefore seen that the nomination of candidates for office is one of the most important functions of a political party. No political organization can be effective or command public confidence and respect where the integrity of its nominations can be called in question. A party nomination for office which does not represent the will of the majority of the persons composing such party has no rightful claim whatever to the support of the voters of such party. Neither will the principles advocated by such party have any binding force upon such nominee, because he would owe his nomination to persons who did

not believe in such principles, and who are antagonistic to such political party. In fact, such a hybrid nomination would not be, in any sense of the word, a party nomination, but would be an independent nomination, independent of the party principles and everything else. To whom would he owe allegiance? Whose creature would he be? Which master would he serve? Who can answer these questions? Such a nominee placed in the office would be at perfect liberty to consult his own pleasure about whatever he might do. It is therefore clear that a party nomination represents the life of the party.

To protect the right of all political parties to select their own nominees for office, our present primary election law was enacted. It was passed to assist, and not to destroy, party nominations. Under the old convention system, by means of secret organization, a few members of a party could control the convention and make nominations against the will of the majority of the voters of such party. The law was passed to give to each member of all political parties a fair and equal voice in the selection of the nominee of his party. To allow persons who are not members of a political party, and who do not believe in its principles, but who are antagonistic to them, to participate in the primary election of the party, for the purpose of nominating its candidates, would be to inflict a greater injury upon political parties than would be possible under the old convention system, which the primary system abolished; for under the old system, while the will of the majority of the members of the party might be defeated, yet those who made the selection were at least members of the party making the nomination, while under the system now proposed men can participate in a party nomination, and possibly control its action, who are antagonistic to the principles of the party, and who would vote against the nominees of the party on the day of the election. The statement of this proposition is enough to show that it is absolutely unsound in principle. Suppose that the old system of making party nominations for office were still in existence, who would be bold enough to say that members of another political party, or persons without party affiliations, without being invited so to do, could force them-

selves into a political party nominating convention and participate in such nomination? Any such attempt would be universally denounced as a disgraceful outrage and result in a riot. What would be thought of an attempt on the part of members of a religious denomination, or of others who were independent of all religious denominations, attempting to interfere with and control the church affairs of a denomination of which they were not members, or of which they were entirely independent? Any such attempt would be resisted, even to death, by all persons who believe in religious liberty, and, if persisted in, would result in baptizing the country in fire and in blood. What legislative body would have the power to force a church to allow persons, who were not members thereof, to share in its privileges and rights and partake of its sacraments?

If the policy upon which this prosecution is based was adopted by the court, it would be death to all political organizations, and would convert our primary election into a mockery, a snare, and a delusion. Such a construction of the statute would make our primary election law revolutionary, unconstitutional, null and void, and of no effect. It would involve us in political anarchy. What is decided in this case is applicable solely and exclusively to primary or nominating elections, for the obvious reason that such elections are held for the sole and exclusive purpose of allowing political parties to nominate their respective candidates. Independent voters are not deprived of their rights by virtue of a primary election; for they have the constitutional right to bring out any candidates they favor by petition. When it comes to the election of officers, each voter has the unquestioned right to vote a party ticket, a mixed ticket, or an independent ticket, as he sees fit, because each voter has an equal right and interest in the men who are elected to office.

For these reasons, in addition to those so well expressed by Judge DOYLE, I heartily concur in the conclusions which he has reached.