# JOE BELL v. STATE.

### No. A-1964.  Opinion Filed July 8, 1914.

#### (141 Pac. 804.)

1. **ELECTIONS—Unlawfully Attempting to Vote—Information—Sufficiency.** An information charging that the defendant "did unlawfully, willfully, and knowingly offer to vote, and then and there, knowing himself not to be a qualified voter," at a primary election, held at the time and in the precinct where the defendant offered to vote, and alleging the particular disability that disqualified the defendant, is sufficient to charge a violation of the Penal Code (Rev. Laws 1910, sec. 2115).

2. **SAME—Unlawfully Attempting to Vote — Information — Judicial Notice.** Courts take judicial notice of the time for holding, and purpose of, primary and general elections.

3. **SAME—"Primary Election."** A primary election is one for the nomination of candidates of the respective political parties by the members thereof.

4. **SAME—Party Nominations.** Party nominations by primary election is a fundamental principle of popular government, and is a permanent rule of public policy in this state, as declared by Const. art. 3, sec. 5 (section 47, Williams').

5. **SAME—Primary Elections—Qualifications of Electors—Constitutional Provisions.** This provision of the Constitution recognizes political parties, for the purpose of nominating candidates for elective offices, and contemplates that only electors who are members of political parties shall participate in primary elections for the selection of candidates for the respective parties, and then vote only the ballots of the party of which they are members.

6. **SAME—Primary Elections—Qualifications of Electors.** The qualifications of electors entitled to vote at a primary election are the same as the qualifications of electors entitled to vote at the general election, within the election precinct where the primary election is held, except that in addition thereto the elector participating in a primary election must be a member of a party recognized by the official ballots of such primary.

7. **SAME—Unlawfully Offering to Vote—What Constitutes Offense —Question for Jury—Proof—Intent.** On the question of intent in unlawfully offering to vote, honest ignorance of the disqualifying fact negatives the willful intent, and excuses what would otherwise be an offense. The intent with which the unlawful act was done may be proved by evidence either directly or indirectly tending to establish the fact, or by inference of law from other facts proved, and the question as to whether or not the defendant knew he was not a qualified voter is a question of fact to be determined by the jury.

8.    SAME—Unlawfully Attempting to Vote—Sufficiency of Evidence. In a prosecution for unlawfully offering to vote, knowing himself not to be a qualified voter, the evidence is held to be sufficient to sustain the verdict and judgment of conviction.

(Syllabus by the Court.)

*Appeal from County Court, Seminole County;*
*A. S. Norvell, Judge.*

Joe Bell was convicted of the offense of unlawfully attempting to vote, and appeals. Affirmed.

*J. A. Baker,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas L. Moore,* Asst. Atty. Gen., for the State.

DOYLE, J. Joe Bell, plaintiff in error, was tried and convicted on an information which, omitting formal parts, charged:

"That on the day and date above mentioned and in said county and state did unlawfully, willfully, and knowingly offer to vote and then and there, knowing himself not to be a qualified voter, did in Seminole county and state of Oklahoma, on the 6th day of August, 1912, which was the date of the primary election in said county and state aforesaid, for the election of county, state, national, district, and township officers of the different parties, which said election was then and there being lawfully and regularly held in said county and state as aforesaid, present himself at the polls in said election, in Lincoln township voting precinct No. 2 for the purpose of voting, and he, the said Joe Bell, had not been a resident of the state of Oklahoma for one year at the time of holding said election; the said Joe Bell then and there knowing himself not to be a qualified voter, as is by law required contrary to," etc.

On the 10th day of March, 1913, judgment was rendered, and in accordance with the verdict of the jury the court sentenced the defendant to be confined in the county jail for a period of 90 days. He has appealed from the judgment.

A substantial statement of the evidence is as follows:

John Randle testified that he was the duly appointed, qualified, sworn, and acting election inspector, precinct No. 2, Lincoln township, Seminole county, at the primary election held on the 6th day of August, 1912; that said election in said precinct

No. 2 was held at the Shipley Schoolhouse; that the defendant, a negro, came in and wanted to vote, and he asked him his name, and he said it was Joe Bell; that he told him that he would have to apply the test required by law, and the defendant failed to qualify, and he told him he could not vote; that the defendant then demanded a ballot. That witness and Ike Waite, an election judge of said precinct, were jointly charged in the federal court, and arrested for enforcing "the Grandfather Clause" at said primary election, and upon their preliminary hearing on the 17th day of October, 1912, before the United States commissioner at Holdenville, the defendant testified as a witness against them, and in answer to a question as to how long he, the defendant, had been a resident of Oklahoma, he heard the defendant state that he had been in the county six months, and in the state of Oklahoma ten months.

I. W. Waite, the other witness for the state, testified that he was one of the judges of the election at precinct No. 2, Seminole county, and was there when the defendant offered to vote; that he was present when the defendant, as a witness for the government, testified before L. S. Fawcett, United States commissioner at Holdenville, and heard him state that he went to the Shipley Schoolhouse in precinct No. 2 in Seminole county to vote at the primary election held on August 6, 1912, and the defendant, in answer to a question asked him as to how long he had been a resident of Oklahoma, answered about ten months.

The defendant requested the court to advise the jury to return a verdict of not guilty, which was overruled, and exception taken. The defendant offered no evidence.

The preface of the brief submitted by the learned counsel for the defendant is as follows:

"Our ignorance is not feigned when we say we do not know of what offense the defendant was convicted. We here give the facts with the hope that the court may enlighten the defendant, as well as his counsel, as to the offense of which he stands convicted."

It is first contended that the information is insufficient to charge any public offense, known to our law, and for this reason the court erred in overruling the demurrer thereto. The conviction is for the offense of unlawfully attempting to vote in violation of the provision of the Penal Code, which declares it to be an offense for:

"Any person knowing himself not to be a qualified voter, who votes or offers to vote at any election, shall be punished by fine not exceeding two hundred dollars, or by imprisonment in the county jail not exceeding six months." (Section 2115, Rev. Laws.)

It requires only a cursory reading of the statute to show that the demurrer was not well taken. The information, stripped of its redundancy, charges the offense substantially in the words of the statute, and alleges that a primary election was held at the time, and in the precinct, and that the defendant, Joe Bell, presented himself at the polls of said election precinct, and did unlawfully, willfully, and knowingly offer to vote, then and there knowing himself not to be a qualified voter, and alleges the particular disability that disqualified the defendant.

It is argued that the information should allege what the defendant was offering to vote for, and that it is not alleged that the defendant offered to vote in or at an election being held under the law.

Our Procedure Criminal provides:

"Neither presumptions of law, nor matters of which judicial notice is taken, need be stated in an indictment or information." (Section 5748, Rev. Laws.)

Courts take judicial notice of the times for holding, and purpose of, primary and general elections.

In the case of *Ex parte Wilson*, 7 Okla. Cr. 610, 125 Pac. 739, it is said:

"Party nomination by primary elections is a fundamental principle of popular government; and is a permanent rule of public policy, as declared by provisions of our state Constitution: Article 3, sec. 5, Const. (section 47, Williams') : 'The Legislature shall enact laws providing for a mandatory primary system which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers,

for all political parties, including United States senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate.' And Const. art. 3, sec. 6 (section 48, Williams') : 'In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot.' * * *

"Upon careful consideration, we are of opinion that the constitutional provisions contemplate that only electors who are members of political parties shall participate in the primary election for the selection of candidates for the respective parties, and then vote only the ballot of the party of which they are a member, and that nonpartisan electors having no party affiliations are relegated to their right to participate in the nomination of candidates for elective office by petition in the manner provided for by the primary election law. A few plain and unquestionable propositions will sufficiently present the views of this court in support of this position.

"The mandatory primary election provision of the Constitution and the provision of article 3, sec. 4, Const. (section 45, Williams'), 'the Legislature shall enact laws creating an election board, not more than a majority of whose members shall be selected from the same political party,' are a constitutional recognition of political party organization. * * * From the provisions of the primary election law enacted in accordance with the constitutional direction, the intent of the Legislature would appear to be manifest. Its plain purpose is to provide for and regulate the nomination of candidates by political parties, and thereby preserve the purity of elections, upon which must depend the safety and security of republican forms of government. A mandatory primary election law, to be valid, must sustain the constitutional rights of electors, who, as members of a political party, participate in such primary elections; and it will not be presumed that the Legislature intended to deny the political parties or members thereof participating in the primary elections proper protection under the law.

"The election provisions of the Constitution and the mandatory primary election law were intended for the protection of the party, and of the citizen in his rights as a member of a political party, and guarantee to him the right to express, through his ballot at a primary election, his wish as to the conduct of the affairs of his own party, and his preference in the selection of the candidates for office within his party. If this was not

so, an elector participating in a primary election would be powerless, and without any method or means of protecting this right conferred upon him by the Constitution and law.   *   *   *

"A primary election is one for the nomination of candidates for office of the respective political parties by the members thereof.   If Republicans vote the Democratic party ballot, and Democrats vote the Republican party ballot, and Socialists vote any ballot but their own, then nominations so made cannot be said to be party nominations.

"It needs no argument for the position that to permit electors participating in a primary election to vote indiscriminately any party ballot they might choose to select, regardless of their party affiliations, would be simply putting a premium upon deceit, dishonesty, and fraud, and would make it possible for the worst elements of the several political parties participating to direct and control their nominations.   Obviously all of the provisions of the primary election law were enacted by the Legislature to prevent electors from voting any ballot except that of their respective parties, and thereby prevent fraud and preserve the purity of the ballot.   The constitutional provision and the primary election law provide only for party elections.   The right and privilege of the individual voter at the general election to cast his vote untrammeled for the candidate of his choice is no more sacred than the right of the individual member of a political party to express his choice for party candidates at a primary election; and such right cannot be taken from him without abridging his constitutional right to participate in a free and equal election.   Const. art. 3, sec. 7.   *   *   *

"The members of the several political parties have the constitutional right to select their candidates for office with the same freedom as they have the right to vote for them after they are nominated, or the primary election at which they vote for candidates is a delusion and a fraud upon the individual voter.   If the independent voter, or the voter affiliating with an opposition party, can vote at the primary election the ballot of a party with which he has no political affiliation, and thereby control the nominations of a party to which he is opposed, the constitutional guaranty that 'the election shall be free and equal' would be destroyed.

"Where primary elections for the nomination of party candidates are held, as authorized and required by law, under the supervision and inspection of election officials, including a party watcher present, as provided by section 3277, *supra*, it is not a

violation of the Constitution that all electors are not permitted to vote at such primary election. * * *

"A citizen's only right to vote depends upon his qualifications under the Constitution and the law, and this right is subject to limitations of age, ancestry, residence, and sex, and other matters mentioned herein. The qualifications of electors entitled to vote at a primary election are the same as the qualifications of electors entitled to vote at the general election within the election precinct where the primary is held, except that, in addition thereto, the elector participating in a primary election must be a member of some party recognized by the official ballots of such primary."

Sections 1 and 4a of article 3 of our state Constitution prescribe the qualifications and disabilities of electors, and section 3132, Rev. Laws, defining the crime of illegal voting, reads as follows:

"Any person not entitled to vote at any election in this state, who exercises that right and casts his vote, whether he be challenged or not, shall be guilty of a felony, and upon conviction shall be confined in the state prison not less than one year nor more than three years.

"Any person who procures a person to vote when such person is not entitled to vote, under the provisions of this act, shall be deemed guilty of a like offense, and subject to a like penalty.

"In the prosecuting of one procuring the casting of any illegal vote, if it is shown that the accused insisted and persuaded or urged the party to vote, this shall be a presumption of guilt."

And section 2803 of Rev. Laws 1910 provides:

"Any person who attempts to commit any crime, and in such attempt does any act toward the commission of such crime, but fails or is prevented or intercepted in the perpetration thereof is punishable," etc.

And in the act of 1913, relating to primary and general elections, and prescribing the penalties for the violations of the provisions thereof, the crime of illegal voting is made a felony and a conviction carries with it disfranchisement for ten years. Sec. 23, c. 157, Session Laws 1913.

The crime of illegal voting may be committed by a person casting an illegal vote, at a primary or general election, knowing himself not to be legally qualified to vote.

It may be said that the law intends that every qualified elector should have the opportunity to freely cast his ballot, and have it honestly counted, and every elector has the right to have his vote counted for all it is worth in proportion to the whole number of qualified electors participating in any primary or general election held in this state. Now, if persons not legitimately entitled to vote are permitted to do so, the legal voter is denied his adequate, proportionate share of influence, and the result is that the election as to him is unequal in that he is denied the equal influence to which he is entitled with all other qualified electors. The laws enacted to preserve the .purity and freedom of elections are adequate in their scope, and ample for the punishment of crimes against the elective franchise, whether committed by the voter, or upon the voter, and if our elections are not free, fair, and honest, the fault does not lie with the legislative department of the government.

Next the defendant's counsel insists that the evidence is insufficient to justify a conviction, and insufficient to warrant a submission of the same to the jury, and in refusing to so advise the jury and direct an acquittal the court erred.

The undisputed facts in evidence on the part of the state show that the defendant, at a primary election being held according to law, being disqualified as an elector, not having been a resident of the state for one year, offered to vote. The only possible question that can arise is the sufficiency of the evidence to show that the defendant knew that he was not a qualified voter when he offered to vote.

It appears from the evidence that when the defendant failed to qualify on the test of his ability to read and write any section of the Constitution he again offered to vote and demanded a ballot. There was no evidence tending to show that he acted innocently, and under a mistaken claim of right, or that he acted under the honest belief that he was a qualified elector. We think that, on the evidence adduced, the question whether or not he acted willfully was for the jury. It is a familiar principle that no act done, or attempted to be done, can be an offense without willful intent. On the question of intent in illegal vot-

ing, or attempting to vote illegally, honest ignorance of the disqualifying fact negatives the willful intent, and excuses what would otherwise be an offense. However, ignorance of law will not be presumed. Every man is bound to know that the law requires that every voter shall be a male citizen of the United States, and of the state, of the age of 21 years, and have resided in the state one year, in the county six months, and in the election precinct 30 days next preceding the election, and must not have been convicted of a felony after the adoption of the Constitution, unless his citizenship shall have been restored in the manner provided by law, and he is bound to exercise reasonable diligence to ascertain the facts which enter into and form these qualifications. The intent with which the unlawful act was done may be proved by evidence either directly or indirectly tending to establish the fact, or by inference of law from other facts proved. Where there is evidence tending to prove the material elements of the offense charged, the question as to whether or not the defendant knew he was not a qualified voter is a question of fact to be determined by the jury. The question in this case was fairly before the jury on the evidence adduced and the charge of the court, to which no exception was taken.

Our conclusion is that the defendant had a fair trial, and was properly convicted. Finding no error in the record, the judgment of the lower court is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.