# JULY, 1934

W. G. BELL ET AL. V. FRED G. HILL, COUNTY CLERK OF JEFFERSON COUNTY, TEXAS, ET AL.

Motion No. 11,520. Decided July 20, 1934.
(74 S. W., 2d Series, 113.)

*Wyatt J. Baldwin,* of Beaumont, for relators.

MR. CHIEF JUSTICE CURETON delivered the opinion of the Court.

W. G. Bell and E. L. Jones, Jr., qualified voters and citizens of Jefferson County, presented to us on July 19, 1934, a motion

for leave to file a petition for mandamus and other relief against the Governor, the Attorney General, the State Democratic Executive Committee and its members, the members of the Jefferson County Democratic Executive Committee, and the various election officers of Jefferson County. The members of the respondent committees are named, and the list of respondents embraces approximately 200 names.

The motion for leave to file is accompanied by the petition for mandamus and an elaborate and able argument on the law questions involved. The petition shows that the relators are negroes, and its object is to invoke the jurisdiction of this Court requiring the respondents to permit the relators to vote in the Democratic primaries of this State, the first of which is to be held July 28, 1934.

The relators allege that the Democratic Party is an organized political party, and is the predominant one in the State of Texas. They also say:

"Plaintiffs further allege that they are members of the Democratic Party and voted as such for the candidates of said party at the general election held in November, 1932, whereat the President of the United States and federal, state, county and precinct officers were elected, to the offices now held by them respectively. That plaintiffs are adherents to the tenets of the Democratic Party and stand ready and willing to take any oath or pledge required of Democrats or to do anything else they are legally required to do under the laws of the State of Texas and/or the United States in order to demonstrate their adherence to the Democratic Party, and that they desire to vote in said primary election to be held on July 28, 1934, and in the run-off primary election to be held on August 25, 1934, all of which information the plaintiffs have conveyed to the defendants who refuse to allow them to vote in the Democratic primary, and plaintiffs allege that the refusal aforesaid of defendants to permit them to vote in the Democratic primaries aforesaid is predicated solely upon the fact that the plaintiffs are negroes."

The petition states in substance, in part, that the respondents are denying, or will deny, the relators the right to vote, because of a resolution passed by the State Convention of the Democratic Party in Texas on May 24, 1932, which reads:

"Be It Resolved, that all white citizens of the State who are qualified to vote under the Constitution and laws of Texas shall be eligible for membership in the party, and as such eligible for participation in the primaries."

This resolution was passed by the Democratic Convention

which met at Houston for the purpose of electing delegates to the National Convention of the Democratic Party. It is alleged that the convention met by virtue of Art. 3167, R. S., which, in so far as a State Convention is concerned, provides:

"Any political party desiring to elect delegates to a national convention, shall hold a State convention at such place as may be designated by the State executive committee of said party, on the fourth Tuesday in May, 1928, and every four years thereafter. Said convention shall be composed of delegates duly elected by the voters of said political party in the several counties of the State at primary conventions to be held on the first Saturday in May, 1928, and every four years thereafter."

■ In order that we may understand the questions involved in this case, it is essential that we clearly comprehend the nature of a political party, such as the Democratic Party. First of all, it is a *voluntary association*, an association formed of the free will and unrestrained choice of those who compose it. No man is compelled by law to become a member of a political party; or, after having become such, to remain a member. He may join such a party for whatever reason seems good to him, and may quit the party for any cause, good, bad, or indifferent, or without cause. A political party is the creation of free men, acting according to their own wisdom, and in no sense whatever the creation of any department of the government. Political parties have existed in the country under some form under all systems of governments when the people were accorded any political rights. It may be said that they originated in the United States with the adoption of the Federal Constitution in 1787. 49 Corpus Juris, p. 1075, sec. 15; Waples v. Marrast, 108 Texas, 5, 11; Koy v. Schneider, 110 Texas, 369, 376, 218 S. W., 479; Davis v. Hambrick, 109 Ky., 276, 58 S. W., 779; Schafer v. Whipple, 25 Colo., 400, 55 Pac., 180; People v. Emmerson, 333 Ill., 606, 165 N. E., 217, 62 A. L. R., 912. Corpus Juris in the section cited has collated various definitions to form its text, and plainly sustains the conclusion stated by us, that a political party is a voluntary organization or association, the outgrowth of free, individual action, and not a permissive organization under some statute. Corpus Juris declares:

"In the absence of a statutory definition, resort is had to the generally accepted meaning of the term, which has been defined as an association of voters believing in certain principles of government, formed to urge the adoption and execu-

tion of such principles in governmental affairs through officers of like belief; a body of men associated for the purpose of furnishing and maintaining the prevalence of certain political principles or beliefs in the public policies of the government; a body of men united for promoting, by their joint endeavor, a national interest upon some particular principle in which they are all agreed; a body of people contending for antagonistic or rival opinions or policies in a community or society, especially one of the opposing political organizations striving for supremacy in a state; a company or number of persons ranged on one side or united in opinion or design in opposition to others in the community; a number of persons united in opinion or action, as distinguished from or opposite to the rest of a community, or association, especially one of the parts into which a people is divided on questions of public policy; those who favor, or are united to promote, certain views or opinions; *a voluntary association for political purposes; a voluntary association of electors, having an organization and committee, and having distinctive opinions on some or all of the leading political questions of controversy in the state, and attempting through its organization to elect officers of its own party faith, and make its political principles the policy of the government.* Where statutes define what shall constitute a political party in certain instances, an organization or combination of electors may qualify as a political party in local matters, and yet constitute part of another political party on national issues, or a political party for some purposes may not be such for other purposes. And a collection of voters may constitute a political party for local purposes without ever having cooperated in politics before. But a mere faction of an established party will not constitute a distinct political party. Political parties have existed in some form under all systems of government where the people were accorded any political rights. They originated in this country with the adoption of the federal constitution in 1787. In a republican form of government they are a necessity. *They result from the voluntary association of electors, and do not exist by operation of law.* The element of time is not essential to the formation of a legal party; it may spring into existence from the exigencies of a particular election, and with no intention of continuing after the exigency has passed. Nor can the number of voters that must unite in order to form a legal party be prescribed by law without violating one of the fundamental theories of popular government, although many states, in regulating the nomination of candidates by political parties, define

a political party to be a political organization or combination of electors which has cast a certain percentage of the votes cast at some particular election. To what extent the rights of organized political parties should be regulated by law is a matter of public policy to be determined by the legislative department—a matter which does not concern the courts. In the absence of legislative enactment, a political party is governed by its own usages and establishes its own rules. Certain powers are inherent in it regardless of statute. A political party is the judge of the election and qualification of its members. And the determination of who shall represent it as its nominees is controlled by the action of the party itself." (Italics ours.)

In the case of Waples v. Marrast, supra, this Court, in an opinion by Chief Justice Phillips, quoted with approval by Associate Justice Greenwood in Koy v. Schneider, cited above, declared:

"*A political party is nothing more or less than a body of men associated for the purpose of furnishing and maintaining the prevalence of certain political principles or beliefs in the public policies of the government.* As rivals for popular favor they strive at the general elections for the control of the agencies of the government as the means of providing a course for the government in accord with their political principes and the administration of those agencies by their own adherents. According to the soundness of their principles and the wisdom of their policies they serve a great purpose in the life of a government. *But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. They perform no governmental function. They constitute no governmental agency.* The purpose of their primary elections is merely to enable them to furnish their nominees as candidates for the popular suffrage. In the interest of fair methods and a fair expression by their members of their preference in the selection of their nominees, the State may regulate such elections by proper laws, as it has done in our general primary law, and as it was competent for the Legislature to do by a proper act of the character of the one here under review." (Italics ours.)

Although voluntary associations arising from the exercise of the free will and liberty of the citizens, political parties are institutions of very great importance under our form of gov-

ernment. They are, in fact, the effective instrumentalities by which the will of the people may be made vocal, and the enactment of laws in accordance therewith made possible. 49 Corpus Juris, p. 1076, Note 3. From the Note cited we quote the following:

"Active political parties, parties in opposition to the dominant political party, are, as has been said, essential to the very existence of our government. The right of any number of men holding common political beliefs or governmental principles to advocate their views through party organization cannot be denied." Britton v. Board of Election Comrs., 129 Cal., 337, 346, 61 P., 1115, 51 L. R. A., 115.

"No one with any knowledge of the history of our country will contend for a moment that political parties have not played an important part in shaping the destinies of our government; nor that they were not a powerful and necessary force in a successful administration of the affairs of the national and state governments. So potent have they become in determining the measures and in administering the affairs of government, that they are now regarded as inseparable from, if not essential to a republican form of government." Ex parte Wilson, 7 Okl. Cr., 610, 620, 125 P., 739. To the same effect Ritter v. Douglass, 32 Nev., 400, 421, 109 P., 444.

"*In America* the great moving forces are the parties. * * * The spirit and force of party has in American been as essential to the action of the machinery of government as steam is to a locomotive engine; or, to vary the simile, party association and organization are to the organs of government almost what the motor nerves are to the muscles, sinews, and bones of the human body. They transmit the motive power. They determine the directions in which the organs act. A description of them is therefore a necessary complement to an account of the constitution and government; for it is into the hands of the parties that the working of the government has fallen. Their ingenuity, stimulated by incessant rivalry, has turned many provisions of the constitution to unforeseen uses, and given to the legal institutions of the country no small part of their present color." 1 Bryce American Commonwealth, p. 636 (quot. Ritter v. Douglass, 32 Nev., 400, 422, 109 P., 444; State v. Felton, 77 Ohio St., 554, 569, 84 N. E., 85, 12 Ann. Cas., 65; Ex parte Wilson, 7 Okl. Cr., 610, 620, 125 P., 739; and partly quot. Kelso v. Cook, 184 Ind., 173, 196, 110 N. E., 987, Ann Cas., 1918E, 68).

"*The truth* is, that the inherent difficulties of democratic government are so manifold and enormous that, in large and

complex modern society, it could neither last nor work if it were not aided by certain forces which are not exclusively associated with it, but for which it greatly stimulates the energy. Of these forces, the one to which it owes most is unquestionably Party." Sir Henry Sumner Maine (quot. State v. Felton, 77 Oh. St., 554, 570, 84 N. E., 85, 12 Ann. Cas., 65; Ex parte Wilson, 7 Okl. Cr., 610, 125 P., 739, 744.)

DeTocqueville, in his celebrated commentaries on the American Constitution and Government, "Democracy in America," first published in 1837, noted at length the celerity with which voluntary associations were formed by the people of the United States for political and other purposes, and the effect which these associations had, not only on governmental affairs, but on social and business endeavors as well. Democracy in American (Reeve's Ed., 1862), Vol. 1, Chap. 12, p. 216; Vol. 2, Chap. 7, p. 138.

In Chapter XII DeTocqueville commenting on the principle and liberty of association, in part, declared:

"In no country in the world has the principle of association been more successfully used, or more unsparingly applied to a multitude of different objects, than in America. Besides the permanent associations which are established by law under the names of townships, cities, and counties, a vast number of others are formed and maintained by the agency of private individuals.

"The citizen of the United States is taught from his earliest infancy to rely upon his own exertions, in order to resist the evils and the difficulties of life; he looks upon the social authority with an eye of mistrust and anxiety, and he only claims its assistance when he is quite unable to shift without it. This habit may even be traced in the schools of the rising generation, where the children in their games are wont to submit to rules which they have themselves established, and to punish misdemeanors which they have themselves defined. The same spirit pervades every act of social life. If a stoppage occurs in a thoroughfare, and the circulation of the public is hindered, the neighbors immediately constitute a deliberative body; this extemporaneous assembly gives rise to an executive power, which remedies the inconvenience, before anybody has thought of recurring to an authority superior to that of the persons immediately concerned. If the public pleasures are concerned, an association is formed to provide for the splendour and the regularity of the entertainments. Societies are formed to resist enemies which are exclusively of a moral nature, and to diminish the vice of intemperance; in the United States

associations are established to promote public order, commerce, industry, morality, and religion; for there is no end which the human will, seconded by the collective exertions of individuals, despairs of attaining.

"I shall hereafter have occasion to show the effects of association upon the course of society, and I must confine myself for the present to the political world. When once the right of association is recognized, the citizens may employ it in several different ways.

"An association consists simply in the public assent which a number of individuals give to certain doctrines; and in the engagement which they contract to promote the spread of those doctrines by their exertions. The right of associating with these views is very analogous to the liberty of unlicensed writing; but societies thus formed possess more authority than the press. When an opinion is represented by a society, it necessarily assumes a more exact and explicit form. It numbers its partisans, and compromises their welfare in its cause; they, on the other hand become acquainted with each other, and their zeal is increased by their number. An association unites the efforts of minds which have a tendency to diverge, in one single channel, and urges them vigorously towards one single end which it points out.

"The second degree in the right of association is the power of meeting. When an association is allowed to establish centres of action at certain important points in the country, its activity is increased, and its influence extended. Men have the opportunity of seeing each other; means of execution are more readily combined; and opinions are maintained with a degree of warmth and energy which written language cannot approach.

"Lastly, in the exercise of the right of political association, there is a third degree; the partisans of an opinion may unite in electoral bodies, and choose delegates to represent them in a central assembly. This is, properly speaking, the application of the representative system to a party.

"Thus, in the first instance, a society is formed between individuals professing the same opinion, and the tie which keeps it together is of a purely intellectual nature; in the second case, small assemblies are formed which only represent a faction of the party. Lastly, in the third case, they constitute a separate nation in the midst of the nation, a government within the Government. Their delegates, like the real delegates of the majority, represent the entire collective forces of their party; and they enjoy a certain degree of that national

dignity and great influence which belong to the chosen representatives of the people. It is true that they have not the right of making the laws; but they have the power of attacking those which are in being, and of drawing up before hand those which they may afterwards cause, to be adopted."

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

*"In America the liberty of association for political purposes is unbounded.* An example will show in the clearest light to what an extent this privilege is tolerated."

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"It must be acknowledged that the unrestrained liberty of political association has not hitherto produced, in the United States, those fatal consequences which might perhaps be expected from it elsewhere. The right of association was imported from England, and it has always existed in America; so that the exercise of this privilege is now amalgamated with the manners and customs of the people. At the present time, the liberty of association is become a necessary guarantee against the tyranny of the majority. In the United States, as soon as a party is become preponderant, all the public authority passes under its control; its private supporters occupy all the places, and have all the force of the administration at their disposal. As the most distinguished partisans of the other side of the question are unable to surmount the obstacles which exclude them from power, they require some means of establishing themselves upon their own basis, and of opposing the moral authority of the minority to the physical power which domineer over it. Thus a dangerous expedient is used to obviate a still more formidable danger.

"The omnipotence of the majority appears to me to present such extreme perils to the American Republics, that the dangerous measure which is used to repress it seems to be more advantageous than prejudicial. And here I am about to advance a proposition which may remind the reader of what I said before in speaking of municipal freedom: There are no countries in which associations are more needed, to prevent the despotism of faction or the arbitrary power of a prince, than those which are democratically constituted. In aristocratic nations, the body of the nobles and the more opulent part of the community are in themselves natural associations, which act as checks upon the abuses of power. In countries in which these associations do not exist, if private individuals are unable to create an artificial and a temporary substitute for them, I can imagine no permanent protection against the most galling

tyranny; and a great people may be oppressed by a small faction, or by a single individual, with impunity."

\* \* \* \* \* \* \*

"It cannot be denied that the unrestrained liberty of association for political purposes is the privilege which a people is longest in learning how to exercise. If it does not throw the nation into anarchy, it perpetually augments the chances of that calamity. On one point, however, this perilous liberty offers a security against dangers of another kind; in countries where associations are free, secret societies are unknown. *In America there are numerous factions, but no conspiracies.*"

Continuing, the same writer declares:

"*The most natural privilege of man, next to the right of acting for himself, is that of combining his exertions with those of his fellow-creatures, and of acting in common with them. I am therefore led to conclude that the right of association is almost as inalienable as the right of personal liberty. No legislator can attack it without impairing the very foundations of society.*"

Commenting on the effect of the freedom of the political association, DeTocqueville declares:

"*There is only one country on the face of the earth where the citizens enjoy unlimited freedom of association for political purposes.* This same country is the only one in the world where the continued exercise of the right of association has been introduced into civil life, and where all the advantages which civilization can confer are procured by means of it.

"In all the countries where political associations are prohibited, civil associations are rare. It is hardly probable that this is the result of accident; but the inference should rather be, that there is a natural and perhaps a necessary, connection between these two kinds of associations.

"Certain men happen to have a common interest in some concern,—either a commercial undertaking is to be managed, or some speculation in manufactures to be tried; they meet, they combine, and thus by degrees they become familiar with the principle of association. The greater is the multiplicity of small affairs, the more do men, even without knowing it, acquire facility in prosecuting great undertakings in common.

"*Civil associations, therefore, facilitate political association; but on the other hand, political association singularly strengthens and improves associations for civil purposes.* In civil life every man may, strictly speaking, fancy that he can provide for his own wants; in politics, he can fancy no such thing. When a people, then, have any knowledge of public life, the notion of

association, and the wish to coalesce, present themselves every day to the minds of the whole community; whatever natural repugnance may restrain men from acting in concert, they will always be ready to combine for the sake of a party. Thus political life makes the love and practice of association more general; it imparts a desire of union, and teaches the means of combination to numbers of men who would have always lived apart.

"Politics not only give birth to numerous associations, but to associations of great extent. In civil life it seldom happens that any one interest draws a very large number of men to act in concert; much skill is required to bring such an interest into existence; but in politics opportunities present themselves every day. Now it is solely in great associations that the general value of the principle of association is displayed. Citizens who are individually powerless, do not very clearly anticipate the strength which they may acquire by uniting together; it must be shown to them in order to be understood. Hence it is often easier to collect a multitude for a public purpose than a few persons; a thousand citizens do not see what interest they have in combining together—ten thousand will be perfectly aware of it. In politics men combine for great undertakings; and the use they make of the principle of association in important affairs practically teaches them that it is their interest to help each other in those of less moment. A political association draws a number of individuals at the same time out of their own circle; however they may be naturally kept asunder by age, mind, and fortune, it places them nearer together and brings them into contact. Once met, they can always meet again.

"Men can embark in few civil partnerships without risking a portion of their possessions; this is the case with all manufacturing and trading companies. When men are as yet but little versed in the art of association, and are unacquainted with its principal rules, they are afraid, when first they combine in this manner, of buying their experience dear. They therefore prefer depriving themselves of a power instrument of success, to running the risks which attend the use of it. They are, however, less reluctant to join political associations, which appear to them to be without danger, because they adventure no money in them. But they cannot belong to these associations for any length of time without finding out how order is maintained amongst a large number of men, and by what contrivance they are made to advance, harmoniously and methodically, to the same object. Thus they learn to surrender their

own will to that of all the rest, and to make their own exertions subordinate to the common impulse,—things which it is not less necessary to know in civil than in political associations. Political associations may therefore be considered as large free schools, where all the members of the community go to learn the general theory of association.

"But even if political association did not directly contribute to the progress of civil assocation, to destroy the former would be to impair the latter. When citizens can only meet in public for certain purposes, they regard such meetings as a strange proceeding of rare occurrence, and they rarely think at all about it. When they are allowed to meet freely for all purposes, they ultimately look upon public associations as the universal, or in a manner the sole, means which men can employ to accomplish the different purposes they may have in view. Every new want instantly revives the notion. The art of association then becomes, as I have said before, the mother of action, studied and applied by all.

"When some kinds of associations are prohibited and others allowed, it is difficult to distinguish the former from the latter beforehand. In this state of doubt men abstain from them altogether, and a sort of public opinion passes current, which tends to cause any association whatsoever to be regarded as a bold and almost an illicit enterprise.

"It is therefore chimerical to suppose that the spirit of association, when it is repressed on some one point, will nevertheless display the same vigour on all others; and that if men be allowed to prosecute certain undertakings in common, that is quite enough for them to eagerly to set about them. When the members of a community are allowed and accustomed to combine for all purposes, they will combine as readily for the lesser as for the more important ones; but if they are only allowed to combine for small affairs, they will be neither inclined nor able to effect it." (All italics ours.)

We have thus gone at great length into the definition, origin, and importance of political associations or parties, for the purpose of showing their direct relationship to governmental affairs in this country.

■ We come now to the constitutional basis of political parties, as well as other voluntary associations. That basis is found in the first section of the Bill of Rights, the first amendment to the Constitution of the United States, which declares:

"*Congress shall make no law* respecting an establishment of religion or prohibiting the free exercise thereof; or *abridging*

544

the freedom of speech or of the press; or the *right of the people peaceably to assemble and to petition the government for a redress of grievances."* (Italics ours.)

Judge Story, in his work on the Constitution, commenting on this provision, says:

"The remaining clause secured 'the right of the people peaceably to assemble and to petition the government for a redress of grievances.'

*"This would seem unnecessary to be expressly provided for in a republican government, since it results from the very nature of its structure and institutions. It is impossible that it could be practically denied until the spirit of liberty had wholly disappeared, and the people had become so servile and debased as to be unfit to exercise any of the privileges of freemen."* (Italics ours.) Story on the Constitution (5th ed.), Vol. 2, Secs. 1893, 1894. See also Watson on the Constitution, Vol. 2, p. 1405.

In United States v. Cruikshank, 92 U. S., 542, 552, the Supreme Court of the United States, in an opinion by Chief Justice Waite, declared:

"The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for any thing else connected with the powers or the duties of the national government, is an attribute to national citizenship, and, as such, under the protection of, and guaranteed by the United States. *The very idea of a government, republican in form implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances."* (Italics ours.)

Section 27 of the Bill of Rights, Art. 1, Constitution of Texas, reads:

"The citizens shall have the right in a peaceable manner to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address, or remonstrance."

The applicability of this section of the Bill of Rights to political associations is made manifest when we consider Section 2 of the Bill of Rights, which declares:

"All political power is inherent in the people and all free governments are founded on their authority and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, *subject to this limitation only,* they have at all times the inalienable right to alter, reform, or abolish their government in such manner as they may think expedient." (Italics ours.)

It is clear from the foregoing provisions of both the Federal

and State Constitutions that the right of the citizens of the United States and of Texas to form political associations, such as a political party, is protected by both organic laws, and that the only limitation on the right of the people to assemble together for their common good, in a peaceable manner, as guaranteed by Section 27 of the Bill of Rights, is that contained in Section 2 quoted above,—which is that a republican form of government must be maintained in Texas.

■ Section 29 of the Bill of Rights excepts from the powers of government the privileges guaranteed therein. This section reads:

"To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and that laws contrary thereto * * * shall be void."

Though the language employed by the concluding section of the Bill of Rights is sweeping in character, the courts have held that the police or governmental powers may be exerted where the object of legislation is within the police power,— that is, where the legislation has a reasonable relation to the peace and good order of society, or the public health and welfare. 9 Texas Jurisprudence, p. 502, secs. 74 to 80; p. 512, secs. 83, 84, 88, et seq. The privileges guaranteed by the Bill of Rights, however, cannot be destroyed by legislation under the guise of police control. "Wherever the Constitution makes a declaration of political privileges or rights or powers to be exercised by the people or the individual, it is placed beyond legislative control or interference, as much so as if the instrument had expressly declared that the individual citizen should not be deprived of those powers, privileges, and rights; and the Legislature is powerless to deprive him of those powers and privileges." 9 Texas Jurisprudence, p. 518, sec. 88.

In regard to political parties and other voluntary associations within the protective language of the Bill of Rights, the legislative power is limited to legislation securing the public peace and good order, and to making effective the right of assembly, petition, etc., as guaranteed by the Bill of Rights itself. As said by Chief Justice Phillips in Waples v. Marrast, supra, speaking with reference to primary elections:

"In the interest of fair methods and a fair expression by their members of their preferences in the selection of their nominees, the State may regulate such elections by proper laws."

546

■ Since the right to organize and maintain a political party is one guaranteed by the Bill of Rights of this State, it necessarily follows that every privilege essential or reasonably appropriate to the exercise of that right is likewise guaranteed,—including, of course, the privilege of determining the policies of the party and its membership. Without the privilege of determining the policy of a political association and its membership, the right to organize such an association would be a mere mockery. We think these rights,—that is, the right to determine the membership of a political party and to determine its policies, of necessity are to be exercised by the State Convention of such party, and cannot, under any circumstances, be conferred upon a State or governmental agency.

In the instant case the papers before us show that the State Democratic Convention held at Houston on May 24, 1932, passed a resolution, which we have previously quoted, and the effect of which is to restrict membership in the Democratic Party of Texas to white persons. That declaration of party faith and government has not been changed or modified by any subsequent State Convention, and remains today as dominant as when first declared. The validity of the resolution and the authority of the Convention to pass the same came before the Court of Civil Appeals at San Antonio in the case of Bexar County v. Booker, 53 S. W. (2d) 123, and were sustained. In the opinion in that case Special Associate Justice Searcy declared:

"The Democratic Party in Texas is a voluntary political association, and, assembled in convention, has the power to determine who shall be eligible for membership in the party, and, as such, eligible for participation in the primaries. A study of the election laws of Texas and their history can lead to no other conclusion.

"Nixon v. Condon, supra (286 U. S., 73, 52 Sup. Ct., 484, 76 L. Ed., 984), was decided May 2, 1932. The State convention of the Democratic party was held at Houston, Tex., May 24, 1932. In our opinion, the adoption of the resolution complained of by appellee, by said convention, was the expression of the will of the Democratic Party in Texas, with respect to who shall be eligible for membership in the party as such eligible for participation in the primaries, in line with the opinion of the Supreme Court of the United States in Nixon v. Condon."

The Attorney General of this State, in a recent able opinion, has likewise sustained the validity of the resolution passed by the Houston Convention. With the opinion of the Court of

Civil Appeals at San Antonio and with that of the Attorney General we are in accord. However, against the correctness of this conclusion the relators invoke the opinion of Justice Cardozo in Nixon v. Condon, previously mentioned. That opinion, while holding that the power to determine the membership of a political party rests in the State convention, held that the power which the State committee exercised in that particular case was derived from statutory authority, and since so derived, the committee was without power to prohibit negroes from voting in the democratic primary. That opinion was based upon a state of facts which arose some years prior to the passage of the resolution by the Houston Convention of the Democratic Party. At that time the party had not spoken through its State Convention; nor had the State Committee been clothed with any power relative thereto, except such power as the State had conferred upon it by Art. 3107 of the Revised Statutes as amended. It is thus seen that the case before Justice Cardozo was one very different from that presented in the petition before us. There, as stated before, no action had been taken by the State Convention fixing the policy of the party or its membership. Here such action has been taken, and the only question is whether or not the action of the State Convention is effective to deny negroes the right to participate in the Democratic primary. Article 3107 as amended by the Acts of 1927 reads:

"Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party. (Acts 1927, 40th Leg., 1st C. S., p. 193, ch. 67, sec. 1.)

■■ Justice Cardozo held that a proper construction of this Statute was that the power to declare the membership of the party had been conferred upon the State Committee by law, and that the effect of this was to make the committee a State agency, which could not discriminate between the white and negro races in fixing the membership of the Democratic Party. With this construction of this Texas statute we cannot agree. The State Executive Committee of the Democratic Party in Texas is just what its name implies,—a committee clothed with

executive power to carry out the will of the party. Under the very language of the statute itself the power to prescribe qualifications of the members of a political party is declared to be in the party. The power to prescribe the qualifications is not conferred upon the State Executive Committee. The statute recognizes that this power resides in the party itself, but the party may exercise this power through its executive committee, just as it does exercise other administrative powers connected with its existence and operation as a party. The party's will, however, is supreme, and the Executive Committee itself a mere agency. This is our interpretation of the law; but whether a correct one or not, it is not a matter of any particular consequence here. If it be said that the purpose of the Legislature was to take from the party and its State Convention the power to determine who should be members of the party, then the Act is plainly void, because in violation of Sections 27 and 2 of the Bill of Rights, previously quoted.

It is idle to say that the citizens shall have the right in a peaceable manner to assemble together for their common good, etc., if the State Government can clothe some committee with power to determine what citizens or who may so assemble in a peaceable manner for their common good, etc. It is idle to say that all political power is inherent in the people, and that all free governments are founded on their authority and instituted for their benefit, and that they have the right to alter, reform, or abolish their government,—and in the next breath to say that when the people of the State assemble for these purposes, they themselves shall not choose with whom they desire to assemble, but that the choice shall be left to some committee authorized by the Legislature to select those who may be thus associated together. If the citizens have a right in a peaceable manner to assemble for their common good, as is declared in Section 27 of the Bill of Rights, then it necessarily follows that the legislative Act which provides that only those citizens who meet the approval of some committee authorized or created by the Legislature may assemble, is an attempted legislative limitation on the broad language of the Bill of Rights, and as such is unconstitutional and void.

◼ The insistence is, however, here made that since the Houston Convention met under the terms of Art. 3167, the only business which that convention could transact was to elect delegates to a National Convention, and that only the State Convention provided for in Art. 3139 could have the power to determine who could be a member of the Democratic Party. With this

insistence we cannot agree. There is no limitation contained in Art. 3167 with reference to declarations of policy by a State Democratic Convention called for the purpose of electing delegates to a National Convention. Necessarily such convention has the same power and authority to determine the membership of the party as any other State Convention of the party would have. The statutes does not in any way attempt to limit the power of such convention; and, indeed, under our view of the Bill of Rights, the Legislature could not limit its power with reference to either policies or membership. A National Party Convention necessarily formulates a platform and policies, and if the will of a State party is to be made known to a National Convention, it necessarily has the power to formulate its policies and define its membership.

8 We have carefully considered the entire petition, and the argument submitted with it. We are clearly of the opinion that the resolution passed by the Democratic State Convention at Houston was a valid resolution under the power clearly guaranteed to that body by the Bill of Rights of this State; and that since the action of that convention has never been revoked by another Democratic Convention, it is still the policy of the Democratic Party of this State, and that there exists no authority to permit negroes to vote in the Democratic primary of the State. Leave to file the petition for mandamus is accordingly overruled.