### CARTER et al. v. TOMLINSON et al.
#### No. 15012.

Court of Civil Appeals of Texas.
Fort Worth.
March 11, 1949.

Rehearing Denied April 29, 1949.

George Sergeant, of Dallas, Robert W. Calvert, of Hillsboro, John D. Cofer, of Austin, Robert Lee Bobbitt, of San Antonio, Edwin Hawes, Jr., of Wharton, Gilbert T. Adams, of Beaumont, E. G. Lloyd, Jr., of Alice, Ed B. Levee, Jr., of Texarkana, Wm. J. Fanning, of Sulphur Springs, Tom Moore, of Lockhart, Jud R. Stuart, of Strawn, Truett B. Smith, of Tahoka, and W. A. Combs, J. Edwin Smith, Jesse Andrews and James V. Allred, all of Houston, Tom L. Tyson, of Corsicana, and Ernest May, of Fort Worth, for appellants.

Thompson, Walker, Smith & Shannon, Rawlings, Sayers & Scurlock, Culbertson, Morgan, Christopher & Bailey, Joe G. Montague, Sidney Samuels, Bert Walker, W. S. Margowski, E. G. Aycock, A. B. Culbertson, Charles L. Stephens, Cantey, Hanger, McKnight & Johnson and Gillis A. Johnson, all of Fort Worth, for appellees.

HALL, Justice.

This is a class suit for damages for temporary and permanent injunction and for a declaratory judgment instituted in a district court of Tarrant County, Texas by Homer Tomlinson and forty-five other citizens of said County,. for themselves as individuals and as representatives of six alleged classes as follows:

Class 1. For and on behalf of qualified voters who voted in the July, 1948 primary for precinct delegates that attended the Tarrant County Convention, wherein delegates were elected to the Democratic State Convention, and who also voted for precinct chairmen.

Class 2. Composed of those precinct delegates who were duly elected, attended the Tarrant County Convention and voted for the Tarrant County delegation to the State Convention.

Class 3. Composed of Tarrant County delegates who were duly elected to attend the State Convention but were prevented from attending said Convention because of the unlawful acts and conduct of defendants.

Class 4. Consist of Neville G. Penrose and Mrs. Bennett L. Smith who were duly elected in 1946 and qualified as members of the State Democratic Executive Committee and acting as such in September, 1948, and who would have been re-elected if they had not been wrongfully excluded from the State Convention.

Class 5. Consist of the Tarrant County Precinct Chairmen who were duly elected in the general primary election in 1948 and who were threatened to be removed from office by unlawful rules and regulations passed by the convention at Fort Worth in September, 1948.

Class 6. Composed of William D. Morris, nominee of the Democratic Party for presidential elector who was elected in the May, 1948 convention and who was removed by the proceedings of the convention in question.

The defendants in the suit are: Jack Carter; Mrs. J. W. Douglas; Charles E. McKnight; J. L. Thomas; Albert Leach; John C. Calhoun; Vann M. Kennedy; Robert Calvert; Byron Skelton; Thomas L. Tyson; and W. O. Reed, all residing in the State of Texas.

It is alleged that the defendants, Jack Carter and Mrs. J. W. Douglas, are the unlawful claimants and pretenders to the position and office of members of the State Democratic Executive Committee from the senatorial district comprising Tarrant County, Texas; that the defendant Charles E. McKnight is County Chairman of the Tarrant County Democratic Executive Committee; that defendant J. L. Thomas is the unlawful claimant and pretender to the position and office of Democratic nominee as presidential elector; that defendant John C. Calhoun is the acting chairman of the State Democratic Executive Committee; that defendant Vann M. Kennedy is the acting secretary of the State Democratic Executive Committee; that defendants Robert Calvert, Byron Skelton, Thomas L. Tyson and W. O. Reed and all those who are claimants to the position and office of the State Democratic Executive Committee and who are acting and asserting themselves to be de jure members.

On the 18th day of October, 1948, upon the presentation of the verified petition by plaintiffs, the court entered a temporary restraining order, and set the application for a temporary injunction for hearing on October 28, 1948. After hearing a great deal of evidence, the court issued a temporary injunction on November 10, 1948.

The effect of the temporary injunction was to restrain Jack Carter and Mrs. J. W. Douglas from acting as members of the State Executive Committee and to enjoin the defendants from interfering with Neville G. Penrose and Mrs. Bennett L. Smith in the exercise of their duties as members of the State Executive Committee; and further to enjoin the defendants from undertaking to exact the aforesaid pledge from Class 5 plaintiffs, the Tarrant County Precinct Chairmen, and from attempting to remove them from office.

The court refused to issue a temporary injunction with respect to the claims of William D. Morris pertaining to his nomination for presidential elector on the ground that final judgment would not likely be entered before time for casting the electoral vote. No complaint is made on appeal with respect to the last mentioned ruling.

The plaintiffs will be hereafter styled appellees and the defendants designated appellants.

To the above action the appellants present this appeal predicated upon three points as follows:

"First Point: The District Court had no jurisdiction to order the temporary injunction for any of the plaintiffs.

"Second Point: The State Democratic Convention had the power to remove Party officers who would not pledge their support to Democratic nominees for President and Vice President.

"Third Point: The majority of the duly elected delegates to the State Convention of the Democratic Party had the right and power at any stage of Convention proceedings to oust those delegates ineligible under Party rules and regulations; and the trial Court erred in concluding that because of such ouster the Convention was never 'properly constituted nor regularly organized.'"

In deciding the questions involved under the three points raised by appellants, we will adhere to the following rules of law:

"* * * The granting or denial of a temporary injunction is largely discretionary with the court, provided a case for relief is made by the pleadings, and the injunction will tend only to preserve the status quo, or is sought to protect the jurisdiction. The court's action in this respect will be disturbed upon appeal only when an abuse of discretion clearly appears * * *" 24 Tex.Jur., p. 121, sec. 85.

"The courts will not follow letter of statute when it leads away from legislature's true intent and purpose and to conclusions inconsistent with general purpose of act." Kilday v. Germany et al., 139 Tex. 380, 163 S.W.2d 184.

"A political party's officers, such as members of party executive committee, are not 'public' or 'governmental officers,' even when provided for by statutory law." Wall v. Currie, Tex.Sup., 213 S.W.2d 816.

"Except to the extent that jurisdiction is conferred by statute or that the subject has been regulated by statute, the

courts have no power to interfere with the judgments of the constituted authorities of established political parties in matters involving party government and discipline, to determine disputes within a political party as to the regularity of the election of its executive officers, or their removal, or to determine contests for the position of party committeemen or convention delegates." 29 C.J.S., Elections, § 88, pages 121-122, Wall v. Currie, supra.

█ It is an action of the State rather than of the political party when the State requires a certain electoral procedure, prescribes a general election ballot made up of party nominees so chosen and limits the choice of the electorate in general elections for state offices. Smith v. Allwright, Election Judge, et· al, 321 U·S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110.

█ "Even in the absence of any express provision of the governing law, officers, whether state, municipal, corporation, or otherwise, hold over until their successors are chosen and qualified, and this rule applies, in the absence of a regulation or usage of a political party, to the county executive committeemen of the party." Walker et al. v. Hopping, Tex.Civ.App., 226 S.W· 146.

█ "* * * Where the legislature exercises its power to define a county committee within the meaning of the election law, only such county committee as the legislature chooses to recognize has any right to deal with the election machinery. * * *" 29 C.J.S., Elections, § 85, page 111.

█ "Appointment of political officers or committees, to be valid, must be in compliance with statute and· in conformity with conferred power to appoint. * * *" 29 C.J.S., Elections, § 86, page 113.

As to appellants' point one to the effect that the district court had no jurisdiction to order the temporary injunction on behalf of any of appellees, we will consider the same as applying to the six different classes enumerated in appellees' petition.

We will first discuss Classes 1 and 2 to ascertain whether or not the court had jurisdiction to hear and determine their alleged cause of action for damages and for injunction.

All statutory citations are from Vernon's Anno.Civ.St.

█ It was held in the case of Yett, Mayor, et al. v. Cook et al., 115 Tex. 205, 281 S.W. 837, 841: "It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject-matter in litigation, either in his own right or in a representative capacity. * * * Whatever may be the rule in other jurisdictions, there can be no doubt that in Texas an action relating to elections or other matters of law enforcement, not involving questions of taxation or unlawful expenditure of public funds, cannot be maintained by a relator or plaintiff whose interest is only that of the public generally, in the absence of a valid statute authorizing the suit." See also 32 C.J. 41; 43 C.J.S., Injunctions, § 19; City of San Antonio v. Strumberg, 70 Tex. 366, 7 S.W. 754; Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012; McDonald v. Lyon, 43 Tex.Civ.App. 484, 95 S.W. 67; Logan v. Thomason, et al, 146 Tex. 37, 202 S.W.2d 212.

█ We find the trial court erred in holding that said parties specified under Classes 1 and 2 have a justiciable interest alleged in their petition against appellants herein.

As to Class 3, relegated to the Tarrant County elected delegates to the September, 1948 convention and who attempted to attend said convention but were alleged to have been unseated by appellants herein, we find the political office of delegates to a political convention (which political party had cast more than 200,000 votes during the last general election according to Article 3101) is created by statute under Article 3134, said article giving in full detail the way and manner in which said delegates shall be elected.

It is readily seen by a reading of this Article that no one has authority to sit in the statutory convention held on the Tuesday after the second Monday after the fourth Saturday in August in the place of the elected delegates except by proxy, if

only one delegate attends he has authority under the statute to vote the full strength of his county vote. There is no way designated to select delegates to fill vacancies except by proxies.

The courts have on several occasions taken cognizance of cases involving purely political offices where the party involved has cast more than 200,000 votes. This rule is announced by implication in the late case of Wall v. Currie, supra. However, in that case the court had under consideration a political party which its members did not cast as much as 200,000 votes in the last preceding general election and therefore the matter involved was purely political and the courts would not take jurisdiction of same.

The case of McCombs v. Stevenson, Tex. Civ.App., 195 S.W.2d 566, was litigation over the chairmanship of the Dallas County Democratic Executive Committee. The same is true in the case of Walker et al. v. Hopping, supra.

 It is noted in Article 3137 that the last two sentences provide as follows: " * * * At this meeting the State committee shall also prepare a complete list of the delegates elected to the State conventions from each county, as certified to the State chairman by each county chairman. The State chairman shall present said tabulated statement and said list of delegates to the chairman of the State convention immediately after its temporary organization on the following day, for its approval or disapproval." Since the statute sets out in minute details how each delegate shall be elected, we do not construe the above portion of said article to authorize the majority of the delegates to the convention to unseat any other delegate who might refuse to sign a pledge to support the National nominees of the party for President and Vice President, because such failure to sign such pledge is not in derogation of any of the statutes under which said delegate is elected or duties which he is to perform in said Convention, as set out in Article 3139, even though said Convention may take up matters to remove presidential electors who were duly elected at the May convention held for that particular purpose.

 The duties of delegates to the statutory political convention in question are controlled and supervised by the government of the state, which, among other things, determines who are the nominees for the governmental offices of the state, and it is common knowledge in Texas that whoever receives the nomination of the party in question is the one who is elected to said office in the general election. Therefore we construe that such statutory regulated functions of a political party, voting the statutory strength, merits the court's jurisdiction. While the question involved here is moot, the convention having terminated on or about September 15, lasting two days, yet we feel the question merits judicial precedence because it is common knowledge that the convention involved never lasts over two days, hence it would be improbable that court action could pursue in time to relieve delegates who were duly and legally elected by the people from being unseated due to their views on questions of national politics contrary to the majority of the remaining delegates.

 Class four pertains to the two members of the State Democratic Executive Committee who were elected as such at the convention in 1946 and who at the time of the opening of the convention had been renominated for such position by the delegates representing Tarrant County comprising the senatorial district wherein said county voted its convention strength as set out in Article 3139, said statute providing further " * * * each of whom shall hold said office until his successor is elected; and, in case of a vacancy, majority of the members of said committee shall fill the same by electing some eligible person thereto, but such person shall be of the same sex as vacating member."

The statutory duties of the State Executive Committee are important to the state government as set out in Article 3137, which, among other things, provides they are to meet on the third Monday after the fourth Saturday in July, 1928 and every two years thereafter at a place selected at the meeting held on the second Monday in June preceding (as set out under Article 3136), "and shall open and canvass the returns of the

primary elections held on the fourth Saturday in July as to candidates for State offices, as certified by various county chairmen * * *. If such returns show that for any State office no candidate received a majority of all the votes cast for all candidates for such office, such committee shall prepare a list of the two candidates receiving the highest vote * * * to be placed upon the official ballot as candidates for office at the second primary election * * *".

Article 3138 prescribes that the State Committee shall also canvass the votes to be cast in the entire state for each candidate for each state office in the first primary election and prepare a ballot for the second primary election.

Article 3140 provides that every certificate of nomination made by the president of the State convention or by the chairman of any executive committee must state when, where, by whom and how the nomination was made.

Article 3142 reads as follows: "Any executive committee or committeeman or primary officer, or other person herein charged with any duty relative to the holding of the primary election, or the canvassing, determination or declaration of the result thereof, may be compelled by mandamus to perform the same in accordance with the provisions of this title."

We do not find the court erred in granting members of Class 4 a temporary writ since their pleadings and their testimony reflect that the delegates to the convention who were to recommend successors to Class 4 were not permitted to do so as set out in Article 3139, and that neither of them has resigned, and especially since Article 3139 specifically prescribes that they shall hold said office until their successors are elected.

Class 5 consists of those precinct chairmen from the various precincts in Tarrant County who were duly elected by a majority of the qualified voters in their respective precincts in the general primary election in 1948 and who were ordered by some of appellees herein to sign as precinct chairman a pledge stating that such precinct chairman "is supporting and will support

the nominees of the Democratic Party for President and Vice President, to-wit, Honorable Harry S. Truman and Senator Alben W. Barkley, in the coming general election, and such precinct chairmen are hereby required to file such written, signed statement with the chairman of such County Democratic Executive Committee within one week after receipt of such communication from the county chairman.

"In the event any Precinct Chairman fails or refuses to file such statement with the County Chairman within the time and in the manner above prescribed, then his office shall be and is hereby declared to be vacant and shall be filled as hereafter provided and in the manner prescribed by law; and neither the State Chairman, the State Democratic Executive Committee, the County Chairman, the County Democratic Executive Committee, nor the Democratic Party shall hereafter recognize such Precinct Chairman, so failing or refusing, as officials of the Democratic Party * * * (signed) C. E. McKnight, Chairman, Democratic Executive Committee."

The office of county precinct chairman is created by statute as set out in Article 3118.

This office, of any political party casting more than 200,000 votes at the previous general election, is completely supervised and controlled by statute relative to important duties pertaining to the election of nominees of said party to be placed on the general election ballot as provided under Article 3117.

Under Article 3104 the Precinct Chairmen select the Presiding Judge to hold the primary elections.

Article 3119 provides that such officers sitting as an executive committee shall have the general supervision of the primary in such county and "shall be charged with the full responsibility for the distribution to the presiding judge of all supplies necessary for holding same in each precinct. * * *"

Article 3121 provides that the chairman of such committee shall receive from the tax collector certified lists of the qualified voters of each precinct in the county to be used in primary elections, provided further

that no primary election shall be held unless such list is obtained and used for reference during the election.

Article 3122 provides that "the same precautions required by law to secure the purity of the ballot box in general elections * * * shall be observed in all primary elections."

Article 3123 provides in substance that the presiding judges of party primary elections in all of the election precincts in the state shall within seventy-two hours after the closing of the polls in said election make returns to the chairman of the county executive committee of the ballot boxes for which said county chairman shall account to the executive committee of the county, and said county chairman shall within forty-eight hours after the votes have been canvassed by the County Executive Committee mail to the State Chairman of their respective parties complete returns as to the results of said primary elections.

Article 3124 provides that immediately upon the completion of the counting of the ballots, the precinct election judges shall prepare and make out triplicate returns of the same showing the result of the election and the chairman of the County Executive Committee shall upon receiving such returns order the members of the County Executive Committee to convene at the county seat of the county on the next succeeding day, whereupon the returns in the hands of the county chairman shall be opened by the Executive Committee in executive session and canvass the same, and the county attorney has authority to institute mandamus proceedings in the proper court to compel the delinquent returning officers to make proper returns as required by law, and it shall be the duty of the county chairman to notify the county attorney of such delinquency of election officers immediately after the meeting of the County Executive Committee on the first Saturday next succeeding the day of the primary election.

Other duties are outlined in Articles 3125 and 3126, as amended.

The precinct chairmen are also subject to the provisions set out in Article 3142, supra.

We have searched the statutes and find that none of the party officers in question here are required to sign or acknowledge any pledge except as enumerated in Article 3110; such pledge is not in question here; we therefore find that appellants were without authority to order the precinct chairmen to execute any additional pledge or to engraft any additional qualification for their election other than as enumerated by the statute.

We adhere to the definition of a political party as announced by the Supreme Court in Seay v. Latham, 143 Tex. 1, 182 S.W.2d 251, 253, 155 A.L.R. 180, cited by appellees, as follows: "A political party is a voluntary association, instituted for political purposes. It is organized for the purpose of effectuating the will of those who constitute its members, and it has the inherent power of determining its own policies."

By reading said case it is important to note that in most every instance where such freedom of the party to determine its own policies is mentioned there is also in substance a provision unless otherwise prohibited by statute. In the Seay case the court had before it the question of whether the political party had the power to determine who shall be its nominees for presidential electors and it held that since there was no statute providing for such nominees then in that event it became wholly a party matter. However, it is also noted that the courts accepted jurisdiction in the case even though it was purely a political matter to be controlled by the party. It is also noted the court commented upon the importance of the precinct and county conventions and its delegates to the September convention, the same as before us now, wherein it stated: " * * * This became an issue in the precinct and county conventions at which delegates to the September convention of the Party were selected. When the delegates to such September convention assembled, it was found that it was the will of a majority of the party, as reflected through such delegates, that the nominees of the party should support the nominees of the National Convention. Thereupon the party, acting through its

regularly organized convention, through which it had a right to speak, concluded to withdraw the nominations of those nominees who would not agree to support the nominees of the National Convention, and to substitute others in their stead (meaning nominees for presidential electors). * * * The party has thus spoken its will, and in the absence of a valid law to the contrary it is entitled to have that will carried into execution."

By necessary implication the above quotation from the court's opinion in the Seay case emphasizes the importance placed upon the party to see to it that favorable delegates are elected in the precinct and county conventions in order that desired results will be effected at and through the September convention in question even as to matters not controlled by statute, such as the one before the court in the Seay case.

The Supreme Court in the case of Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037, 1040, had under consideration a case in which the Executive Committee of the Democratic Party was striving to select a party nominee to fill an unexpired term of a railroad commissioner, which vacancy occurred after the primary election and for which office there had been no previous nomination of a candidate to be voted upon in the general election because the term of office was not expiring, the vacancy having occurred by reason of death of the incumbent. It was there held that since the Legislature had failed to provide the way and manner nominations should be made under such a condition in that event the party through its convention would have the right to name a nominee. The court went on to say: "For what purpose and to what end, it may appropriately be inquired, have the various statutes in relation to party nominations been enacted in this State if the rights and duties therein defined and the matters they purport to govern still present mere political questions, to be settled alone by party law and in the party forum, and are therefore beyond the cognizance of the courts? The very purpose of this legislation was to relieve these matters of their mere political character, as was their nature aforetime, and subject them to the regulation of the statute law.

The courts exist only to enforce the law. This includes the statute law. If they have no cognizance of rights arising under a civil statute regulating a political party, upon the ground that the body regulated is political and therefore any question affecting it is also political, though in terms governed by an express statute, it must follow that a political party is beyond the control of the law. But political parties are not beyond the control of the law. When regulated by law, their action to the extent that it is so governed may be reviewed by the courts as the only means of giving effect to the sovereign law of the State. In such case the inquiry is judicial because made the duty of the courts; and the questions presented are likewise judicial because arising under the written law."

All of the statutes which we have referred to make no attempt to control the inherent power of a political party to adopt principles of its own except in so far as the same may affect the election and selection of names of nominees to be placed upon the ballot of the general election to fill governmental offices, but in this phase of political action it is now controlled by the State for the purposes intended and the law must be followed in all similar situations to which its provisions are applicable. Under the statute the electors elected their representatives; they are elected for a definite time, and they have the right therefore to serve as such until under the statute conditions arise which constitute a vacancy. It is then and then only that no one but the remainder of the committee as a body is authorized to select their successors.

In 9 R.C.L. 1088, the following is noted: "The dominant idea pervading the primary law is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot, and thus be given effect, whether it is in accord with the wishes of the leader of his party or not, and so shall be put in effective operation in the primaries. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards. And in order to accom-

plish this end not only is it necessary to protect the right of party members to vote at the primary as against unreasonable regulation, but also to protect the committeeman or other party official elected thereat from being summarily ejected from his place in the party organization. So, where the primary laws provide for party committees and the election of party committeemen, membership may be gained in no other way than that provided by the statute, namely, by the suffrage of the party members at the primary election. The committee cannot remove the committeemen so elected, and it is the duty of the court to give full force and effect to the legislative intent so manifested."

We find no statute or court precedent to the effect that supporting the party national nominees for president and vice president of the United States is a prerequisite for holding a political office of either an executive committee man, a precinct chairman, or a delegate to the statutory September State convention. While is is wholesome for the party that all who participate in it be able to support the national ticket, yet it is current history that many of the southern states and a great portion of Democrats in Texas, due to the political policies of the national party as being an encroachment upon state's rights, did not choose to support the last nominee for President, it is most earnestly desired by members of the party that the time will never come again in Texas when the majority of the people will not support the presidential nominees of its party, as was done in 1928. It is under the law, in the precinct elections, that the party preserves its strength in matters pertaining to party nominees, as there is where the will of the people is directly reflected and " * * * All political power is inherent in the people * * *". Article I, Sec. 2, State Constitution, Vernon's Ann.St. It would be an abrogation of all the statutes herein enumerated to hold that a minority of the duly elected delegates sitting in the state statutory convention in question should control the majority and have them removed because the majority does not desire to support the national nominees of the party, or

that the majority of the delegates could unseat the minority on such national question. This does not mean that the party through its convention cannot vote upon and endorse this or any other subject not prohibited by statutory or constitutional law; neither are we deciding the question of whether under any condition the majority elected delegates could not, for a just cause, remove some of its delegates.

Appellees rely on other cases to support their contention:

Scurry v. Nicholson, Tex.Civ.App., 9 S.W.2d 747, by this court does support appellees' contention on the very point involved here with reference to members of the County Executive Committee being forced to either resign or take the pledge to support the national nominees of the party for President and Vice President. The case was reversed by the Supreme Court in Nicholson v. Scurry, 119 Tex. 250, 28 S.W.2d 512, 514 because, among other things, "the rights of others, not parties to this suit, have been undertaken to be litigated and adjudged herein. Of course, the county executive committee and the Honorable J. B. Hatchitt were not injured by the judgment of the honorable Court of Civil Appeals as it ruled in their favor; but, if that court had held, or if this court should hold, that the county executive committee had exceeded its powers under the statutes, and that the creation of the vacancy and the appointment of J. B. Hatchitt were unauthorized and unlawful under said statutes, then their powers and rights would have been adjudicated without their being parties to the suit, and, of course, such adjudication could not be binding upon them." This decision indicates the Supreme Court might not have agreed with the Court of Civil Appeals; hence we do not feel the weight of stare decisis.

Love v. Buckner et al., 121 Tex. 369, 49 S.W.2d 425. The pledge there involved was relegated to delegates "held for the purpose of selecting delegates to the state convention * * * at which national delegates are selected * * * in the national Democratic convention." That kind of delegate or that kind of convention is not in point here.

Bell v. Hill, 123 Tex. 531, 74 S.W.2d 113, was denounced by the Supreme Court of the United States in the case of Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110.

Appellees also rely upon Articles 3107 and 3146 as amended, which read as follows: Art. 3107: "Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or non-membership in organizations other than the political party."

Art. 3146 as amended: "Except for a place on party tickets for public elective offices, all contests within a political party shall be decided by the State, District or County Executive Committee, as the nature of the office may require, each such Committee to retain all such powers and authority now conferred by law."

■ In discussing these two statutes we will consider the following rule: "Separate statutes of a state which deal with the general subject of party primaries, and which are intended to constitute one general scheme of legislation thereon, should be construed together, and terms used under one section of the statute are to be construed with reference to the meaning given those terms in other sections." 29 C.J.S., Elections, § 111, page 149.

The courts of this state, together with other statutes enumerated herein, have added by implication to Article 3107 words similar to the following: provided such qualifications as prescribed are not in conflict with other statutes regulating the selection of certain officers of the party, or against the provisions of the State or National Constitution. While it is true that the laws regulating primary elections and regulating actions of parties voting its strength of 200,000 or over at the general election are in conflict with each other to the extent that there is now under consideration by the bar of this state a revision thereof, yet we find what we have said in this opinion fairly exemplifies the intention of the Legislature at the time of the passage of the respective statutes. Certainly appellees would not contend that Articles 3107 and 3146 nullify all of the other statutes setting forth how the party's precinct chairman, delegates to the September convention and members of the State Executive Committee are selected.

The same can be said about Article 3146. If the issue to be decided is purely party forum and not controlled by statute, certainly Article 3146 will apply. This article was before the Supreme Court in the case of Wall v. Currie, supra, wherein it adopted a portion of the dissenting opinion of the Court of Civil Appeals, Currie v. Wall, 211 S.W.2d 964, 968, 969, which cited said article. While the Supreme Court did not comment on the article, yet it referred several times to the reason why the court could not take jurisdiction of the case was because the Republican Party had not voted the requisite number of votes to become regulated by statute. If the party in question had not voted the statutory strength its officers could do everything in its convention that appellants are contending here.

The issue for decision on this appeal is whether to leave in force or dissolve the temporary injunction. It is our opinion that the record before us fails to show any abuse of discretion, or any lack of jurisdiction or authority, of the trial judge in issuing the temporary injunction at the suit of Neville G. Penrose and Mrs. Bennett L. Smith, the plaintiffs in Class 4, and the Tarrant County Precinct chairmen named as plaintiffs in Class 5, whether or not the plaintiffs in Class 1, Class 2 and Class 3 were entitled to maintain the suit for such injunction, and whether or not said last mentioned plaintiffs are entitled to relief of any other character in this suit.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Due to the voluminous statement of facts and transcript we refrained in our opinion from discussing same but in view of the major arguments set out in appellants' mo-

tion for rehearing and appellees' reply, we will enumerate briefly some of the facts upon which the trial court based its ruling.

Statement of facts show and the trial court found that the State Executive Committee, pursuant to Article 3107, heard and determined the contest of Class 3 and that it ordered such duly elected and certified delegates to be placed on the temporary roll of such convention, and that such action was never set aside by any duly convened or organized convention.

The court further found that when such lawful delegation from Tarrant County attempted to attend the state convention it was excluded and ousted by unlawful, arbitrary and oppressive action taken under the leadership of appellants before organization of the convention, either temporary or permanent, was ever perfected; that such unauthorized action was in violation of a portion of Article 3137 that "the State chairman shall present said tabulated statement and said list of delegates to the chairman of the State convention immediately after its temporary organization on the following day, for its approval or disapproval."

The court further found that some of the delegates from Tarrant County were willing to sign a pledge in advance to support Truman and Barkley as the national nominees and that one of said delegates attempted to submit a resolution to allow those to remain in the convention who were willing to support the Truman and Barkley ticket but they were also unlawfully ousted.

The court further found that violation of the statutes referred to in the original opinion by appellants which were designed to secure the rights of peaceable assembly and fair expression brought about the opposite result; that after the ousting of the Tarrant County and other delegations the doors of the auditorium were thrown open to a rump group and others who were waiting outside and who had not been elected by any statutory method anywhere by any legal and qualified voters of the State of Texas, and that such persons were thereafter allowed to speak for Tarrant County and the 28th Senatorial District; that no list was made up of these persons composing such rump group, neither were their names certified to nor passed upon by the State Executive Committee according to law and that such unlawful action removing said delegates, if it were legal to do so, could only be taken after the authorized convention was duly constituted, convened and organized; that the Tarrant County delegates were excluded without any hearing and were denied any reasonable opportunity to express their views; that at the time for selecting the state executive members to represent the 28th Senatorial District there was no one in attendance authorized to speak for or to recommend persons to succeed Class 4.

▪ Most of appellants' contentions have their origin in the party convention system, wherein members of the political party meet to deliberate and place in nomination their candidates for various political offices, such as political parties that do not vote the required statutory strength. These delegates are usually chosen by party caucuses but even in such instances it has been held that the Convention is organized and effected by a call of the roll of delegates for the election of a temporary chairman and the declaration of the result by the person authorized to call the convention to order. " * * * The existence of a roll of delegates and the calling thereof to ascertain who is entitled to vote are conditions precedent to organization. A convention may be organized by, and only by, the persons whose names appear on the rolls, their right to be seated not being subject to question at this stage of the proceedings. Under statute only the registered members of the political party can lawfully participate in a convention held for the purpose of nominating candidates for such party." 29 C.J.S., Elections, § 101, page 134. The court found from the evidence adduced that members of Class 3 were removed from the convention hall before a temporary chairman was elected and before a roll call of the delegates was had.

As stated in our original opinion the political party in question here is controlled by primary election laws and the action of the party must conform to the primary law

in all respects. 29 C.J.S., Elections, § 111, page 148.

This brief statement of the facts does not change our ruling in the original opinion which we adhere to.

Appellants' motion for rehearing is overruled.